[Civ. No. 4741. Third Appellate District.—September 21, 1933.]

MANSELL A. DAVIS, Respondent, v. KITTLE MANUFACTURING COMPANY (a Corporation), Appellant.

Stick, Moerdyke & Gibson and John C. Stick for Appellant.

Roscoe R. Hess for Respondent.

TUTTLE, J., *pro tem.*—By this action plaintiff seeks to recover damages arising out of the breach of a contract to pay royalties due from the manufacture and sale of camp beds alleged to have been invented by him. Trial was had by the court, and the judgment in the sum of $16,295.04 was rendered in favor of plaintiff. Defendant now appeals from this judgment.

For his first cause of action plaintiff alleges in his complaint the execution of the following contract between him and defendant:

"This Agreement, made and entered into in duplicate at Los Angeles, California, this 2nd day of March, 1923, by and between Mansell A. Davis, of Los Angeles, California, hereinafter known as party of the first part, and Kittle Manufacturing Company, of Los Angeles, hereinafter known as party of the second part,

"Witnesseth:

"That Whereas, the party of the first part has designed a certain folding camp bed on which he has made application for letters patent in the patent office of the United States of America; and

"Whereas, the party of the second part is desirous of securing the right to manufacture and sell said camp bed for the full life of any patents granted thereon; now

"Therefore, in consideration of the mutual covenants hereinafter contained, it is agreed:

"First: The party of the first part hereby grants to the party of the second part the exclusive license to manufacture and sell camp beds made under or covered by any and all patents, which said party of the first part now has or may hereafter obtain, whether upon the original device or on any improvement thereon, or any form or style of camp bed or improvement thereon. Said exclusive license shall cover the States of California, Oregon, Washington, Idaho, Nevada, Utah and Arizona.

"Second: It is understood that said party of the first part is now prosecuting a claim, in the United States Patent Office, for a patent on a camp bed, and said party of the first part agrees to continue to prosecute said claim with all possible diligence and to bear all expenses connected therewith. All subsequent patents on improvements on said original camp bed shall be taken in the name of said party of the first part and the necessary expense thereof shall be shared equally by said parties during the existence of this contract. Said parties shall share equally all necessary expense incurred in obtaining subsequent patents which said party of the first part may hereafter secure, during the life hereof, on any other form or style of camp bed or improvement thereon.

"Third: The party of the second part shall not manufacture or sell or be interested in the manufacture or sale of any other camp bed which could in any way be considered a modification of this bed.

"Fourth: All necessary expense of litigation to enjoin the infringement of, or to otherwise protect the patents contemplated herein shall be shared equally by each party, but should second party notify first party of infringement by a third, the first party does not forthwith proceed to stop such infringement, then and in that event the party of the second part may take any necessary steps to stop said infringement, in which case first and second parties will share expense alike.

"Fifth: Said party of the second part agrees to pay said party of the first part a royalty of seventy-five cents (75c) each on the first One Thousand (1000) beds manufactured and sold during each contract year from and after the date hereof, and fifty cents (50c) each on all beds manufactured and sold in excess of said amount of 1000. Said party of the second part agrees to advance to said party of the first part the sum of Two Thousand ($2,000.00) Dollars on account of said royalties, payable as follows: One Thousand ($1000.00) Dollars upon the execution hereof, receipt whereof is hereby acknowledged, and Two and 50/100 ($2.50) Dollars on each of the first four hundred (400) beds manufactured and sold. No further payments of royalties shall be made until the amount due on account of

said royalties shall have exceeded the sum of Two Thousand ($2,000.00) Dollars.

"Sixth: Said party of the second part agrees to use all reasonable diligence in prosecuting the sale of this bed, and use their best efforts to promote the sales in the territory assigned to them.

"Seventh: All royalties accruing on beds sold and delivered during the calendar month shall be paid between the first and tenth days of the succeeding calendar month. Said party of the first part or his duly appointed representative shall have the right, at all reasonable times, to inspect the sales records of said party of the second part.

"Eighth: This contract shall be binding upon and inure to the benefit of the respective parties hereto, their heirs, personal representatives, assigns, or successors.

"In Witness Whereof, said parties have hereunto set their hands the day and year first above written.

"M. A. Davis

"Party of the first part

"Kittle Manufacturing Company

"By R. N. Prichard

"Party of the second part."

It is further alleged that on July 3, 1922, plaintiff had filed an application in the United States patent office for a patent on the camp bed, and that on March 16, 1926, letters patent No. 1577204 were issued upon said application; that after the execution of said contract plaintiff filed an application for a patent on a camp bed which was a modification of the bed covered by the first patent, and on March 16, 1926, letters patent No. 1577205 were issued upon said second application; that on December 17, 1925, plaintiff filed an application, No. 75995, for a patent on a camp bed which was a modification of the camp bed referred to in the contract, and covered by said patents, and "that plaintiff is now diligently prosecuting his claim of patent in said application which is now pending in the Patent Office; that prior to said date of December 17, 1925, and during the year 1925, defendant, at the request of the plaintiff herein, and under the direction of the plaintiff, made drawing for the patent claimed in said application No. 75995 and furnished material to the plaintiff for the manufacture of a model of the

camp bed, a patent for which application was made in said application No. 75995, and that at the time of the making of said drawings and the furnishing of said material defendant knew that said drawings and said material were to be used by the plaintiff in connection with the application of the plaintiff for a patent on the modification of the camp bed claimed by the plaintiff in the application for patents then pending and for which letters patent Nos. 1577204 and 1577205 were thereafter issued to the plaintiff as aforesaid. A supplement to the first cause of action was filed, which contains the following allegations: "That the defendant, during the latter part of the year 1925 manufactured and sold and was interested in the manufacture and sale of another camp bed in some respects different from the camp bed referred to in said contract dated March 2, 1923, and attached to the complaint herein as Exhibit 'A', but in its essential features only slightly modified from the bed referred to in said contract and in contemplation by the parties at the date of the execution thereof, said other camp bed being of the type and structure referred to in said patent application No. 75995; that defendant has continued in the manufacture and sale of such other camp bed, down to the date hereof and that the plaintiff is informed and believes, and therefore alleges that the number of such other camp beds so manufactured and sold is in excess of 18,000 beds; that said manufacture and sale of said other camp beds has been in violation of said contract dated March 2, 1923, and that as a result thereof, the plaintiff has been damaged in an amount equivalent to the royalties payable under the terms of said contract." Plaintiff prays for judgment, after an accounting, for all royalties due under said contract.

The second cause of action is based upon another contract which is identical with the first, except that it grants an exclusive license in the entire United States, outside of the states enumerated in the first contract. A supplement to the second cause of action was also filed, and its allegations are practically the same as those found in the supplement to the first cause of action.

Defendant in its answer admits the issuance of the two patents to plaintiff. As to the application for the third patent, defendant alleges in his answer that the camp bed

embodied therein was not invented by plaintiff, but was invented by defendant, who has filed an application for a patent covering the same, and is now diligently prosecuting its claim, and that said application is now pending. Defendant further avers that plaintiff's second patent, No. 1577205, differs materially and substantially from the camp bed described in patent No. 1577204, and denies that the camp bed described in the second patent is a modification of the bed described in the first patent. As to the pending application for a third patent, No. 75995, defendant alleges that the bed described therein is wholly different in construction and mechanical principles from the beds described in the two patents, and denies that said bed described in the said application is a modification of the beds described in the two patents. It is also alleged that the bed described in patent No. 1577205 was jointly invented and designed by plaintiff and defendant; that by reason of severe competition, it became unprofitable to manufacture the bed covered by patent No. 1577205; that subsequent to the first day of January, 1926, plaintiff and defendant agreed to abandon and terminate said agreements, and did each relieve the other of all further obligations thereunder; that defendant has made full payment of all royalties up to and including December 1, 1925, and that no payments have been made since said date; that plaintiff, in January, 1927, organized and became president of a corporation which proceeded to manufacture a camp bed described in and covered by said two patents and said application, or which were modifications of said beds. The answer to the second cause of action is practically the same.

Turning to the appellant's opening brief we find an extended discussion of certain legal principles, but no error is pointed out which would render such principles applicable. No complaint is made upon the basis that evidence was wrongfully admitted or excluded, nor is the measure of damages attacked. Our own conclusion is that appellant's points and authorities are directed toward the insufficiency of the evidence to uphold the findings, and we shall proceed upon that theory.

The court found with respondent upon every allegation of the complaint which we have mentioned, and against every defense set up by appellant. The parties agreed, at

the conclusion of the trial, that the number of beds manufactured by appellant subsequent to December 1, 1925, could be ascertained by the court from an affidavit to be filed by appellant. This was done, and the precise number of beds so manufactured and for which royalties were allowed, was found by the trial court, and no question is raised as to such fact.

 It appears that the camp beds manufactured by appellant under said contract, and covered by the two patents granted to respondent, were of a heavy type and design, and were known as the "heavy-weight" bed, while the beds manufactured by appellant after December 1, 1925, were of a lighter character, and were known as the "light-weight" beds. The latter beds, appellant contends, were not invented by respondent, nor were they a modification of the other heavy type beds; hence they do not come under the terms of the contract, and no royalties are due thereon. The trial court found that said "light-weight" beds were invented by respondent and covered by his application for patent, and furthermore, that such bed was a modification of the other beds covered by the patents, and upon which appellant paid royalties for several years. It will be observed that the language of the contract is extremely broad, in that appellant is prohibited from manufacturing or selling, or from being interested in the manufacture or sale of any camp bed which *could in any way be considered a modification of this bed*. The evidence is spread over many volumes of the transcript, but from the examination we have made we are satisfied that there is ample support for the findings upon these issues.

It appears that appellant filed an application for a patent covering the "light-weight" bed manufactured by it. At the time of the filing of said application there was also pending an application filed by respondent covering a similar type of bed.

 Appellant contends that our state courts have no jurisdiction over the subject matter of the case. It is true that under United States Code, title 28, section 371, and Judicial Code, section 256, the courts of the United States have exclusive jurisdiction "of all cases arising under the patent rights or copyright laws of the United States". Under that act it is well settled that a state court has no

jurisdiction of a case arising under the patent laws. (20 R. C. L., p. 1181.) "But where an action or suit is brought on a contract of which a patent is the subject-matter, either to enforce the contract or annul it, the case arises on the contract and not under the patent laws, and a state court has jurisdiction. Accordingly, an action may be maintained in a state court to enforce the payments of royalties or license fees—and while it is elementary that a state court has no jurisdiction with respect to a case arising under the patent laws, it is equally well settled that a case involving patent rights does not necessarily 'arise under the patent laws', and that a state court has jurisdiction to determine questions relating to patent rights whenever such questions arise incidentally or collaterally to a main cause of action over which a state court has jurisdiction." (20 R. C. L., par. 63, pp. 1181, 1182.) "Such a provision does not deprive the state courts of the power or duty, when the question arises collaterally, of deciding whether the patent relied upon is of any validity." (*Nash* v. *Lull,* 102 Mass. 60 [3 Am. Rep. 435].) The cause of action is based upon contract, and the matter of patent rights is incidental to the main issue. It therefore follows that our state courts have jurisdiction over the subject matter of this controversy.

■ Appellant next contends that "plaintiff cannot collect royalties on future inventions until he secures a patent on his future inventions". The rule appears to be otherwise. "The license may be given before issuance of patent. . . . " (48 C. J., p. 264.) "The inventor of an unpatented device may make a valid contract for its manufacture, use or sale. It is no objection to the validity of such a contract that any person may manufacture it until a patent is issued. . . . If, therefore, the defendant contracted to pay a royalty before patent was issued, the plaintiff is entitled to recover." (*Hamilton* v. *Park & McKay Co.,* 112 Mich. 138 [70 N. W. 436], citing numerous authorities.) This contention is without merit.

■ The trial court found that plaintiff, early in 1927, organized or caused to be organized, a corporation known as "Champion Folding Furniture Company", with its offices in the state of Illinois; that he was the holder of some 2,500 shares of stock in said corporation; that for a time he was the president and general manager thereof; and that said

corporation manufactured certain camp beds in several respects similar to the camp bed described in application No. 75995, but also differing in certain particulars. The court further finds that it is not true that plaintiff, by or through said corporation, or in any manner, or by any means, has at any time manufactured or sold in any territory the camp beds described in said letters patent No. 1577204 or No. 1577205, or by said application No. 75995, and that plaintiff was not the inventor or patentee of said bed so manufactured by said Champion Company. By the contract between these parties plaintiff granted to defendant the "exclusive license to manufacture and sell camp beds". Some of these "Champion" beds were sold by the said corporation in the territory wherein defendant was given an exclusive license under the contract. It is admitted that the evidence is without conflict upon this fact. In this connection, it is the contention of appellant that he was evicted by respondent from the enjoyment of the exclusive license granted by the contract. It is no doubt the rule that "the exclusive right granted to a person other than the patentee to use and sell a patented device within a named district of country excludes the owner of the letters patent from selling the same or using the same in that region". (*Brush Elec. Co.* v. *California Elec. Light Co.*, 52 Fed. 945.)

Appellant concludes that the conduct of respondent in connection with the formation of the "Champion Company" and the sale of beds by said company while respondent was president thereof, constitutes a failure of consideration and is a defense to the action for royalties. The trial court, however, found that respondent was not the inventor of said "Champion" beds, and furthermore, that neither respondent nor "Champion Company" manufactured or sold any beds of the type described in the contract between the parties. We are satisfied that there is evidence in the record to sustain these findings, and the contention made is without merit. We might also add that if the contention of appellant were sustained by evidence which is without conflict, proof of such facts would not result in a failure of consideration and preclude recovery upon the part of respondent in his action for a breach of contract. Under such facts appellant would have the right to cross-complain or set up a counterclaim based upon a breach of the implied

obligation of respondent not to sell the same bed in the territory mentioned in the contract. Upon the point of eviction we therefore hold that under the findings of the court there *was* no eviction and no failure of consideration.

■ Summing up the entire matter, it would appear that several years after the contract was entered into and respondent had performed under its terms, the type of bed contemplated by the agreement, by reason of competition from other bed manufacturers, became commercially unsuccessful. Appellant therefore ceased to manufacture more of the exact type agreed upon, and commenced to manufacture and sell a lighter type of bed. The trial court, however, found, upon conflicting evidence, that this lighter type was a modification of the original bed contemplated by the contract. As appellant had bound and obligated itself not to manufacture or sell any other camp bed which could in any way be considered a modification of the bed mentioned in the contract, it must respond in damages for the manufacture and sale of this modified type of bed.

The judgment is just and proper in all particulars, and accordingly it is affirmed.

Plummer, J., and Pullen, P. J., concurred.