[Civ. No. 9143. Second Appellate District, Division One.—July 25, 1935.]

KITTLE MANUFACTURING COMPANY, Appellant, v. MANSELL A. DAVIS et al., Respondents.

Freston & Files and Ralph E. Lewis for Appellant.

Roscoe R. Hess for Respondents.

SHINN, J., *pro tem.*—Plaintiff brought this action against the defendants, charging them with a conspiracy, pursuant to which it is alleged defendant Davis violated certain contracts between himself and plaintiff, and defendants Davis and Adkins wrongfully engaged in business in competition with plaintiff, in violation of its contract rights. Plaintiff sought judgment for certain profits alleged to have been made

by the defendants and damages and certain other relief in addition thereto. This appeal is taken by plaintiff from a judgment in favor of the defendants.

Davis was the inventor of a folding type camp bed and certain improvements thereon, for which he had filed an application for letters patent. On March 2, 1923, after certain of the patent claims had been allowed, but before patent had issued, Davis entered into a contract with plaintiff, Kittle Manufacturing Company, which we will refer to as "Kittle". By the terms of that agreement Kittle was given the exclusive license "to manufacture and sell camp beds made under or covered by any and all patents which party of the first part (Davis) now has or may hereafter obtain, whether upon the original device or on any improvement thereon or any form or style of camp bed or improvement thereon". Under this agreement the territory in which Kittle was to sell was restricted, but by later modification it was made to embrace the entire United States.

Davis agreed to continue to prosecute his patent application with all possible diligence and to bear all expenses connected therewith; subsequent patents or improvements were to be taken in the name of Davis, the expense thereof to be shared equally by the contracting parties, as well as the expense of obtaining subsequent patents and of prosecuting infringement suits. Kittle agreed to use all reasonable diligence in prosecuting the sale of the bed, agreed not to manufacture or sell any other camp bed which could be considered a modification of the patented bed, and agreed to pay Davis monthly stipulated royalties on all beds sold and delivered.

Davis subsequently amended his first application and filed two other applications for patents upon camp beds. Kittle engaged in and continued the manufacture of camp beds under its agreement with Davis and paid all royalties falling due prior to December 1, 1925, at which time it discontinued all royalty payments. Kittle, however, continued to manufacture and sell a camp bed differing from the original Davis invention. Kittle claimed to be the inventor of this bed and caused application to be made for letters patent thereon, but in proceedings before the patent office, the claims of Kittle as inventor of the bed were denied and the rights of Davis therein were sustained. All of the camp beds we have re-

ferred to which were sold by Kittle after December 1, 1925, were either sold under its license contract so as to carry a royalty or in violation of that contract so as to give rise to a liability to Davis for damages.

On March 22, 1928, Davis brought suit against Kittle in the Superior Court of Los Angeles County, alleging the manufacture and sale by Kittle of a large number of beds covered by said several patent applications of Davis, praying for an accounting thereof and the recovery of the stipulated royalty upon such sales. The defendant Kittle answered, alleging that the first bed invented by Davis was impracticable and unmarketable, that the second bed manufactured by Kittle was invented jointly by Kittle and Davis, and that a third bed manufactured by Kittle was invented by it, its agents and employees, this being the bed upon which Kittle had applied for a patent. It alleged the contract with Davis had been mutually abandoned and denied all liability for royalties.

This answer further alleged that in January, 1927, Davis organized a corporation under the laws of Illinois, known as Champion Folding Bed Company, with its principal office in Illinois; that Davis was a stockholder therein and president and general manager from the time of its organization until September 15, 1927, when he became and thereafter continued to be the corporation's representative in the city of New York. The answer further alleged "that plaintiff, by and through said corporation, has ever since the organization of said corporation manufactured and sold and is now manufacturing and selling to the public generally throughout the territory described in said agreements of date March 2, 1923, and December 22, 1923, those certain camp beds described in and covered by said letters patent Nos. 1577204 and 1577205 in said application No. 75995 (the Davis patents), hereinabove and in plaintiff's complaint referred to, or modifications of said camp beds therein described". The prayer of this answer was that plaintiff take nothing and that defendants have judgment for its costs. Kittle also filed in that action an amendment to its answer and a cross-complaint and amended cross-complaint. Each of these pleadings contained further allegations regarding Davis' activities in connection with the Chicago corporation and the business done by Davis through the corporation in competition with Kittle. It was

alleged that Davis conspired with Adkins to develop and patent the "Champion" bed substantially the same as the one covered by Davis' last application, No. 75995, and that plaintiff and Adkins, well knowing of the rights of Kittle under its contract with Davis, and for the purpose of defeating its rights thereunder, perfected said bed and Adkins applied for and received in his own name letters patent thereon, although it was agreed between Davis and Adkins that upon Adkins being reimbursed for moneys he had advanced in developing the bed and certain profits, Adkins would turn over the patent to Davis or his nominee. It was further alleged that the corporation acquired an assignment of the patent application from Adkins and issued to Davis stock of the value of $20,000, and that the corporation thereafter manufactured and sold beds in competition with Kittle and in violation of its contract with Davis and made a profit therefrom of $25,000. By its cross-complaint Kittle sought to recover $20,000 as the value of the stock in the Illinois corporation, the sum of $25,000 as profits made by the corporation, and the sum of $50,000 on account of Davis' breach of his agreement with Kittle. Davis answered the cross-complaint, denying generally the allegations thereof. Upon these pleadings the case was tried. At the conclusion of the introduction of evidence by Kittle under its cross-complaint, Davis moved for judgment in his favor on the cross-complaint, upon the ground that the evidence introduced by Kittle was insufficient to prove the allegations thereof. This motion was granted. Kittle moved the court for leave to withdraw its cross-complaint and later, but before judgment, moved to withdraw the amendment to its answer, both of which motions were granted. Findings were made in favor of Davis and judgment was given against Kittle for royalties due Davis in the sum of approximately $16,000. Among other facts, the court found as follows: "The court further finds that it is not true that the plaintiff, by or through said corporation or in any manner or by any means, has at any time manufactured or sold in any territory the camp beds described in or covered by said letters patent Nos. 1577204 and 1577205 or by said application No. 75995. That it is true that said Champion Folding Furniture Company, after its incorporation, manufactured certain camp beds which were in several

respects similar to the camp bed described in said application No. 75995 but were different therefrom in that the side rails of said bed made by said Champion Folding Furniture Company have the open side of the channel facing upward and that the end arms or extension arms of said bed have their open sides facing downwards, and that the plaintiff herein was not the inventor or patentee of said bed manufactured by said company.''

That action was tried on April 23, 1929. Findings and judgment were signed and filed on January 11, 1930. Kittle appealed from this judgment, which has been affirmed by the District Court of Appeal of the Third District (*Davis* v. *Kittle Mfg. Co.*, 134 Cal. App. 254 [25 Pac. (2d) 253]). (The fact of the affirmance of this judgment is not shown by the record but is before us by reason of statements in the briefs of counsel calling our attention thereto.)

Kittle instituted the present action July 23, 1929. The complaint herein contains the same allegations as the amendment to the answer and the cross-complaint filed by Kittle in the former action which were withdrawn before judgment. Adkins, codefendant with Davis in the instant action, was not a party to the action of *Davis* v. *Kittle Mfg. Co.* In the present action both defendants answered, substantially denying the allegations of the complaint. As a further defense they set up the pendency of the action of *Davis* v. *Kittle Mfg. Co.* as a plea in abatement and asked that trial of the present case be abated pending final judgment in the case of *Davis* v. *Kittle Mfg. Co.* The entire record in *Davis* v. *Kittle Mfg. Co.* was introduced in evidence in support of the plea in abatement. This plea was overruled and the case proceeded to trial. The court found in the instant case that Kittle had paid all royalties and had complied with its contracts with Davis up to and including December 1, 1925, but that on or about December 29, 1925, plaintiff notified defendant Davis that it would not pay any further royalties ''and thereby such refusal was without cause on the part of defendant Davis''. The court then found that Davis and Adkins worked together to develop another camp bed and to patent the same and place it upon the market; that Adkins loaned Davis $500 to be used in said work; that the bed was developed and a patent issued thereon to Adkins, which patent

was assigned to Champion Folding Furniture Company, Davis receiving therefrom 500 shares of the preferred stock and 5,000 shares of the common stock of said company; that thereafter and prior to June 22, 1932, the corporation manufactured and sold 60,000 to 70,000 camp beds under the Adkins application and patent; that said bed was substantially the same camp bed covered by Davis' patent application No. 75995; that it was a mere modification of the former bed and that it was covered by and within the terms of the Kittle-Davis contracts, and that therefore all rights to manufacture and sell the same were vested in Kittle Manufacturing Company. It was further found that the bed was developed and patented under an agreement between Davis and Adkins that Adkins would claim to be the sole inventor but that Davis would pay the fees of the patent attorney for obtaining the patent and that Adkins would assign the patent to Davis or his nominee upon repayment of the money he had loaned Davis, and that Adkins would receive an undetermined share of the profits. The court found that the bed for which patent had issued to Adkins was the sole invention of Davis. It was further found as follows: ''The court finds that the application for said patent by defendant F. A. Adkins and in his name was pursuant to a plan and agreement made and entered into by and between the defendants Davis and Adkins, under the terms and conditions of which the defendant Davis would invent and develop said bed and the patent would be applied for in the name of the defendant Adkins in order that the defendant Davis might stand harmless as to the contracts then existing between himself and plaintiff as set forth in finding No. II hereof.'' The court further found the facts we have heretofore stated, relating to the issues raised and tried and the procedure followed in the trial of *Davis* v. *Kittle Mfg. Co.,* and that Davis recovered judgment in said action for the sum of about $16,000. It was found that the issues in the instant action were not those involved in the previous action.

From the foregoing recital, it will be seen that the trial court in the first case found that Davis was not the inventor or patentee of the ,bed manufactured by Champion Folding Furniture Company and that that bed was not the same as any of the beds embraced within either of the three said

patent applications of Davis. Upon the trial of the instant case the court found that Davis was the sole inventor and the equitable owner of the patent of the bed manufactured in Illinois and that that bed was substantially the same bed as the one described in Davis' patent application No. 75995, and that the right to manufacture and sell such bed was vested exclusively in Kittle. In each of the actions it was held that the Davis-Kittle contract was subsisting and unrescinded. As a result of the two judgments plaintiff herein has been held to a liability for the payment of royalties to Davis as stipulated in the contract and at the same time has been denied the right to recover from Davis damages sustained through Davis' breach of the same contract.

The conclusion of the trial court that plaintiff could not maintain this action because of its failure to pay royalties was erroneous. It was expressly found that the contract was not terminated. If Davis had the right to terminate it he waived that right when he sued for the recovery of royalties. Having enforced performance from Kittle, he could not rely upon nonperformance by Kittle as an excuse for his own failure to perform. It is true generally that it is necessary for a plaintiff to allege and prove, in an action based upon a contract, that he has performed all conditions precedent to or concurrent with the right he seeks to enforce. But this is because he must show the defendant to be bound by the contract and obliged to render to the plaintiff the consideration sued for. The court will not compel one party to a contract to perform it and excuse performance by the other. That is the rule which the trial court attempted to follow and which respondent relies upon in support of the judgment. But the rule must be applied to the entire relations of the parties under the contract. When Kittle failed to pay royalties, Davis had the right to treat the contract as terminated and sue for damages, or he had a right to sue for the royalties. (*Adams-Campbell Co.* v. *Jones,* 71 Cal. App. 723 [236 Pac. 322].) He could not do both. He made his election and having exacted performance from Kittle he cannot justly escape responsibility for his own nonperformance. The contract must be enforced against both parties or against neither. Therefore, Kittle's unwillingness to pay royalties, for which Davis has recovered a judgment for the sum due

and interest thereon, was no defense to the present action against Davis for damages, and the case should not have been decided against plaintiff upon that ground.

The anomalous situation presented by the two judgments has been brought about by the action of Kittle in failing to file a counterclaim in the former action and in dismissing its cross-complaint in that action instead of submitting to a judgment thereon and appealing therefrom. That course was taken, no doubt, in the belief that the issues tendered by the cross-complaint in *Davis* v. *Kittle Mfg. Co.* could be again litigated in an independent action. In this we think plaintiff was mistaken. Its proper course would have been to appeal from the judgment of nonsuit on the cross-complaint. Its claim against Davis was triable only in the action which Davis brought to recover royalties. The case falls within the provisions of section 439 of the Code of Civil Procedure, which provides that ''if the defendant omits to set up a counterclaim upon a cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, neither he nor his assignee can afterwards maintain an action against the plaintiff therefor''. The transaction set forth in Davis' complaint as the foundation of his right to recover royalties was the one in which Kittle was licensed to manufacture and sell beds under the Davis patent applications and in turn obligated itself to pay royalties to Davis. There was no other transaction between Davis and Kittle. Undoubtedly the rights of Kittle to recover damages for a violation of its rights arose out of the same transaction. (*Stoddard* v. *Treadwell*, 26 Cal. 294.) Kittle had no rights whatever except those that were grounded in the contract. Davis owed Kittle no duty other than performance of the contract upon his part. The allegations of conspiracy between Davis and Adkins are material only to the question of the liability of Adkins. They add nothing to the cause of action against Davis. A conspiracy itself is not actionable, but only that which is done under the conspiracy. Whatever form the activities of Davis assumed, they became actionable only when they transgressed the contract rights of Kittle. Kittle's claim could not have arisen out of rights which were independent of its contract rights with Davis.

The right of a defendant to counterclaim for causes arising out of the same transaction as a plaintiff's claim has always been recognized by statute in this state. Ever since the adoption of the codes the failure to file a counterclaim in such cases has been a bar to any further action upon the claim. The policy of the law is so obvious as to require little comment. It is to require reciprocal rights flowing from a common source to be determined in a single action, thus avoiding not only unnecessary vexatious litigation but also the contingency of conflicting judgments, of which those involved in the instant case are conspicuous examples. Section 438 of the Code of Civil Procedure preserves the right of recoupment which at common law was available to a defendant in any action on contract. ''Recoupment looks through the whole contract, treating it as an entirety, and regarding the things done and stipulated to be done on each side as the consideration of the things done and stipulated to be done on the other; and when a plaintiff seeks redress for the breach of the stipulations in his favor, it sums up the grievances on each side, strikes a balance, and gives him a judgment for only such difference as may be found in his favor.'' (*Finney* v. *Cadwallader*, 55 Ga. 75.) To hold that the two claims in question did not arise out of the same transaction would be in effect to hold that a claim for the enforcement of a contract and a claim to recover damages growing exclusively out of its breach, arise out of separate transactions, which is clearly not the case.

A common form of counterclaim in an action on contract is for damages for negligence of the plaintiff in performing or failing to perform the contract. (Pomeroy's Remedies, 5th ed., 1061.) Plaintiff's alleged damage resulted from an eviction from its exclusive privilege granted by the contract. (*Wilfley* v. *New Standard Concentrator Co.*, 164 Fed. 421.) In an action for rent a tenant is required to set up a counterclaim for damages resulting in a constructive eviction and if he fails to do so he cannot assert the same in another action. (*Baker* v. *Eilers Music Co.*, 175 Cal. 652 [166 Pac. 1006].)

The court below found that the present action sounded in tort and therefore could not be a proper subject of a counterclaim in an action on the contract. We think the court must also have been of the opinion that the two claims did not

arise out of the same transaction, but whether the court so believed or not, it very clearly did not give effect to the amendment of section 438 of the Code of Civil Procedure of 1927, which governs in this case. (*Terry Trading Corp.* v. *Barsky,* 210 Cal. 428 [292 Pac. 474].) A counterclaim need only tend to defeat or diminish the plaintiff's claim and consist of a claim of the defendant against the plaintiff as between whom a several judgment could be given. Plaintiff's claim against Davis and Adkins charged them with a joint and several liability. (*Proper* v. *Sutter Drainage Dist.,* 53 Cal. App. 576 [200 Pac. 664].) The fact that the claim existed also against Adkins rendered it none the less a proper counterclaim against Davis. It met all the requirements of section 438 of the Code of Civil Procedure. We conclude, therefore, that such damages as were sustained by Kittle up to the trial of the action of *Davis* v. *Kittle Mfg. Co.* could have been asserted against Davis only in that action. ██ The breach was a continuing one and damages accruing after April, 1929, would not be so barred. If, therefore, any of the damages sustained by Kittle, for which a recovery is sought in this action, accrued after April, 1929, the judgment should be reversed.

We are therefore faced with the question whether the judgment should be reversed to allow a retrial as to damages that may have been sustained since the trial of the first case. We have pointed out that the cross-complaint in *Davis* v. *Kittle Mfg. Co.* alleged profits earned by Champion Folding Furniture Company in the sum of $25,000 and damages sustained by Kittle in the amount of $50,000. The complaint in this action contains the same allegations, but by a supplement to the complaint it was alleged that profits were earned and damage sustained down to June 22, 1932. Our attention is not directed to any evidence in the case showing sales of the Champion bed later than the month of April, 1929, when the first case was tried. An examination of the voluminous record has disclosed no such evidence. It shows only that from 60,000 to 70,000 beds were sold, prior to the taking of the deposition of the witness N. S. Harter on June 22, 1932. The findings are to the same effect.

Kittle's claim for damages on account of sales made between March, 1926, when Davis and Adkins became associated,

and April, 1929, when the first case was tried, is barred. But some of the beds may have been sold between April, 1929, and June, 1932, as of which latter date sales amounted to 60,000 to 70,000.

It was necessary in this case for Davis to show that all sales were made before the trial of the first action, in order to sustain his defense that the entire issue as to damages was involved in that case. This he failed to do. Upon the other hand it is the duty of plaintiff upon this appeal to show affirmatively that its entire claim is not barred by failure to prosecute it by counterclaim in the former action. It may be that no damage accrued after April, 1929, in which case there is no issue to be retried.

We have reached the conclusion that we should not affirm the judgment as to Davis upon the basis that Kittle's claim is barred by the former adjudication. The record before us does not affirmatively show the entire claim to be so barred. To affirm the judgment would bar the recovery by Kittle of any part of its claim accruing after April, 1929. The only course open to us, which will avoid this possible injustice, is to reverse the judgment as to Davis for the purpose, alone, of allowing a retrial of the issue of damages suffered by plaintiff herein, subsequent to the trial of the case of *Davis* v. *Kittle*, No. 247843 in the Superior Court of Los Angeles County.

We now have to consider the appeal from the judgment in favor of Adkins. The former judgment does not bar the further prosecution of plaintiff's claim against Adkins, who was not a party to the first action. The other defenses having failed, the present judgment can stand as between Kittle and Adkins only upon findings that Adkins was not guilty of the acts with which he was charged, or upon an absence of substantial evidence of his liability. The findings as to plaintiff's allegations are wholly insufficient to determine the issues that were tried between these parties. The complaint is replete with allegations of conspiracy and fraud upon the part of Adkins and yet there are no definite findings thereon. The findings relate the circumstances under which Adkins undertook to work with Davis in the development of a different bed and detail their activities thereafter. It is found that Adkins took out the patent in his name "in

order that defendant Davis might stand harmless as to the contracts then existing between himself and plaintiff, as set forth in finding No. II hereof''. This surely cannot be accepted as a finding nor does it admit of the inference that Adkins acted innocently in the transaction or that his conduct was free from fraud and collusion with defendant Davis. It is not sufficient to negative the allegations of the complaint upon those issues and they therefore remain undetermined. A judgment must be supported by sufficient findings. (2 Cal. Jur. 1032.) Here there are no findings which support the judgment in favor of Adkins. The failure to make findings upon these issues does not furnish a reason for reversal of the judgment if it appears from the evidence that the facts would necessarily have been found in Adkins' favor. It has been necessary for us to examine the record in order to determine whether findings in plaintiff's favor would find support in the evidence. We have read at length the testimony of defendants Davis and Adkins. Although there is no direct evidence that Adkins knew of the terms of the Davis-Kittle contracts, there is circumstantial evidence strongly tending to establish such knowledge. Adkins was president of a company in Chicago that had been handling the beds manufactured by Kittle. He knew the latter was·about to bring out a light-weight bed called the Davis Light-Weight Bed, and that Davis claimed to be the inventor of that bed as well as of the first one. He loaned Davis $500 with which to develop a bed to compete with the new bed made by Kittle and agreed to apply for and take the patent in his name and to assign it to the nominee of Davis. The evidence amply shows that Davis was the inventor and that he and Adkins discussed some changes in the bed they were developing which might prevent infringement of the Davis patents. The bed was sold in violation of the rights of Kittle and the court found Kittle to have been damaged thereby, without finding the amount of the damage. The court might reasonably have concluded that Adkins acted fraudulently and for the purpose of profiting thereby, in thus assisting Davis to violate his contract. The evidence, we think, would have warranted findings sufficient to support a judgment for damages against Adkins.

The judgment in favor of defendant Davis is reversed for the purpose of allowing a retrial of the issue of damages

suffered by appellant herein subsequent to the trial of the case of *Davis* v. *Kittle*, No. 247843 in the Superior Court of Los Angeles County; as to the defendant Adkins the judgment is reversed in its entirety.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 20, 1935, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 23, 1935.

Thompson, J., voted for a hearing.