[Civ. No. 6001.    Third Appellate District.—February 28, 1938.]

UNION DIE CASTING COMPANY, LTD. (a Corporation), Respondent, v. EDWIN ANDERSON, Appellant.

Campbell & Campbell, William D. Campbell and C. Arden Gingery for Appellant.

Frank M. Gunter for Respondent.

PLUMMER, J.—This appeal is from a judgment in favor of the plaintiff corporation against its former president, decreeing a rescission of three royalty contracts, and awarding a restitution of $1891.30, which had theretofore been paid by the plaintiff to the defendant Anderson. The defendant Anderson filed a cross-complaint demanding judgment in his favor in the sum of $3,359.08. Nothing was awarded the defendant upon his cross-complaint.

The royalties under contracts mentioned were paid, and to be paid upon the manufacture and sale by plaintiff of small tilting devices to be attached to the top rail of Venetian blinds, the president Anderson claiming to hold patents thereon.

The complaint in this action is voluminous; the findings are sixty-six in number, and in the appellant's brief, are attacked serially, beginning with number I and ending with LXVI, and arguments presented that not a single one of the findings is supported by the testimony.

In the consideration of this cause, however, it is incumbent upon us only to consider finding LXVI. This finding has reference to the provisions of section 311 of the Civil Code, which will be considered hereafter.

The court held that the defendant Anderson, as president of the plaintiff corporation, failed to make a full, fair and complete disclosure, and that the contracts were unfair, unjust and unreasonable as to the plaintiff. The court also found that there was no compliance with the further provisions of section 311, *supra*. From which it would follow, necessarily, that the contracts were void.

The record shows that prior to November, 1928, the defendant Anderson and one Piepenbrink were engaged in partnership under the title of "Union Die Casting Company";

that on or about November 2, 1928, one J. W. Dunn conceived the idea of a tilting device to be placed upon Venetian blinds to hold the same in any position desired; that Dunn communicated his ideas to the defendant Anderson, and requested said partnership to develop the device; that Anderson thereupon began the development of the device and the work of developing the same was done entirely by employees of the corporation.

On or about January 19, 1929, the plaintiff was incorporated. After a permit had been issued by the commissioner of corporations, the assets of the partnership, on or about February 18, 1929, were transferred to the corporation; that since February 18, 1929, up to and including the filing of the complaint herein, the plaintiff now is, and has been the owner of all the assets formerly owned by said partnership; that from January 19, 1929, to December 16, 1930, the defendant Anderson was a director and general manager of the plaintiff, in charge of all its books, assets and records; that from December 16, 1930, to March 31, 1933, the defendant was a director and president of the plaintiff corporation; that on March 31, 1933, the defendant Anderson ceased to be president, but continued as a director of said corporation until January 18, 1934; that during all the times mentioned, while the defendant was in charge of the work carried on by the corporation, it was under the specific understanding that he would devote all of his time and attention solely to the plaintiff's interest; that after the transfer of the assets of said partnership to the plaintiff, on February 18, 1929, the employees of the plaintiff continued the development of said device, which is called in the transcript the "first device", using tools and material belonging to the plaintiff, and during the regular hours of their employment; that on or about August 22, 1929, J. W. Dunn, heretofore referred to, conceived the idea of a change in the "first device", and communicated the same to the defendant Anderson, who then had the employees of the plaintiff develop said change; that on or about November 3, 1929, the plaintiff commenced the sale of said "first device", and continued the same until about January 22, 1931, with the knowledge and consent of the defendant Anderson, and without any contract therefor, or payment of royalty to the defendant; that after the plaintiff had manufactured and sold thirty-five thousand of said

tilting devices, without any payment of royalty thereon, or contract therefor, the defendant demanded that the company pay him a royalty, and contracts were thereupon issued by which the company agreed to pay to the defendant Anderson the sum of 3 cents on each device manufactured and sold by it.

It appears from the record that these contracts were entered into upon representations made by the defendant that he was the sole and exclusive inventor of the devices; that all of the work was done at his own expense, and not by employees of the company, upon the company's time, and that all of the ideas entering into the device were made and invented by him on or about December, 1928; likewise, that no other parties had any ownership or interest in and to said device.

The record also shows that a portion of the "first device" to wit, the idea of a shaft and one gear engaging a segmental shaft, was rejected on account of a prior patent issued to a firm by the name of Wilson, Hughes & Tripp; that the firm just mentioned were manufacturing a like device, which the defendant promised he would have stopped, but knew at the time of making said promise that the manufacture of said device by others could not be stopped by reason of what we will call the "Wilson Patent".

It further appears from the record that before the device was reduced to practice, or was practicable, the defendant received the following letter from J. W. Dunn:

(On letterhead of Consolidated Venetian Blind Co.)

"Houston, Texas.    August 22, 1929.

"Address all correspondence to home address,

"2620 Wheeler Ct.

"Houston, Texas.

"Mr. Edwin Anderson,

"2269 East 51st St.

"Los Angeles, Cal.

"Friend Anderson:

"I received the model, and with one exception it is O.K. Some better means must be developed for fastening the tapes on the center connections, and I think I have that figured out. The enclosed crude sketch will show you.

"There is one more thing, and that is the grooved pulley through which the tilting cord operates.    This pulley should

be thicker, with a spiral groove in it so the cord will go around twice to prevent slipping. With just one wrap as it is now, the cord will stretch and wear to such an extent that eventually it will slip through, and inasmuch as it is desirable to have the cord arranged with tassels on the ends, it should not be allowed to slip through this pulley. I know you will understand this, so will not make any sketch.

"Again, the center connections are not spaced on your sample quite wide enough to allow the tape to go between the ends of the tilt rail pieces. Space for tape is shown on sketch enclosed.

"I do not exactly like the combination center connection and worm gear device. Tilting cords should go at the extreme end of the blind, so think it would be better to use two of the flat center connections and a separate worm gear tilting device at the end of the rail.

"Another thing. The hook on the center support which extends downward should be so designed that it is not possible for the rail to jump out when the blind is raised up.

"If we use the worm gear device at the extreme left hand end of the rail, and center connections at each tape, the center hooks should be so designed that the rail can be easily hooked in, especially because one of these connections will be located at the first tape to the right, or from four to seven inches from the worm gear device.

"You mentioned in your letter that you had taken out patent protection. I presume you took this out in your name, and will transfer it to me when all charges for models, patent fees, etc., have been paid, and you have received an order for dies and a quantity of the hardware.

"If Schatz has been of assistance in this, he is entitled to a share in the patent, or at least the privilege to use the device in his territory.

"Please write me with reference to the patents.

"I am returning the model to you by express, and request that you rebuild it as suggested and return to me.

"Don't forget to send in your bill for all this.

"Yours very truly,
"J. A. DUNN."

This letter shows conclusively that a separate worm gear tilting device for use at the end of a Venetian blind really had not even been thought of by the defendant.

The record shows that after the receipt of this letter, the device was changed in the company's plant by the employees of the company so as to correspond with the suggestions made in the letter written by Dunn. This work was all done by the employees of the company, upon the company's time, and with the company's material. The letter also shows that there was a specific understanding that Dunn would pay the plaintiff for all charges for the work done, and that the patent, when issued, would be transferred to Dunn, according to the custom theretofore prevailing in relation to the invention, patent and manufacture of suggested devices. The interest of Dunn in the patented device was not disclosed to the corporation, nor the fact that the defendant had received suggestions as to how to make the device practicable had been received from Dunn.

It appears that after the device was patented, and when the defendant demanded a royalty from the plaintiff, some agreement was entered into between the defendant and Dunn relative to splitting the royalty which should be paid on the manufacture of the devices by the plaintiff and sold to the employer of Dunn. This, of course, was not disclosed to the plaintiff at the time of entering into the contracts.

That the court has jurisdiction to inquire into royalty contracts has been upheld a number of times. We cite the following cases: *Deakins* v. *Superior Court,* 90 Cal. App. 630 [266 Pac. 563] ; *Davis* v. *Kittle Mfg. Co.,* 134 Cal. App. 254 [25 Pac. (2d) 253] ; *Stevens* v. *Privett,* 88 Cal. App. 706 [264 Pac. 549] ; *Spicer* v. *Hurley,* 161 Cal. 1 [118 Pac. 249].

It has been held a number of times that where an employee of a corporation invents a machine, with the aid of other employees of the corporation, and its time, material and machinery are used in such proceeding, there is an implied obligation to permit the employer to manufacture and sell such device without the payment of royalty. To this effect we cite the following cases: *Valley Iron Work Mfg. Co.* v. *Goodrick,* 103 Wis. 436 [78 N. W. 1096] ; *Fuller & Johnson Mfg. Co.* v. *Bartlett,* 68 Wis. 73 [31 N. W. 747, 60 Am. Rep. 838] ; *Lane & Bodley Co.* v. *Locke,* 150 U. S. 193 [14 Sup. Ct. 78, 37 L. Ed. 1049].

By reason of what we are about to say, we need not place our conclusions as to supporting the judgment upon the fact of the work being done in the company's shop, by com-

pany employees, upon company time, as failure to comply with section 311, *supra,* is conclusive herein. The court found upon sufficient evidence that full disclosure was not made by the defendant to the corporation at the time the contracts were entered into, he being the president of the company and under obligations to make the full contract. It appears, also, from the findings of the court and the record in this case that subdivisions a and b of section 311, *supra,* were not complied with. Those subdivisions read as follows: "(a) The fact of such common directorship or financial interest be disclosed or known to the Board of Directors or committee, and noted in the minutes, and the board or committee authorize, approve or ratify such contract or transaction in good faith by a vote sufficient for such purpose without counting the vote or votes of such director or directors; and (b) The fact of such common directorship or financial interest be disclosed or known to the shareholders and they approve or ratify such contract or transaction in good faith by a majority vote or written consent of shareholders entitled to vote."

Not having complied with the various provisions of section 311, *supra,* the contracts were not legally executed, and therefore were devoid of any binding effect upon the plaintiff.

It follows, therefore that we need not discuss any of the sixty-five preceding findings of the court attacked upon this appeal. Finding number LXVI is sufficient to, and demands an affirmance of the judgment. And it is so ordered.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 30, 1938, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 28, 1938.