[Civ. No. 14341. Second Dist., Div. One. Apr. 10, 1944.]

NILS SEAGREN, Appellant, v. R. STANLEY SMITH, Respondent.

Walter G. Danielson for Appellant.

Walter E. Smith and Everett H. Mills for Respondent.

YORK, P. J. — This appeal which is presented on the judgment roll alone is from that portion of a judgment rendered in an action by a patentee for an accounting and injunction against his licensee by which the trial court determined that it was without jurisdiction to grant any relief from and after the date of a notice given to him by the defendant cancelling the license.

From a recitation in appellant's opening brief outlining the factual background of the instant litigation—which is not disputed by respondent—it appears that appellant is the inventor of a multiple gear rotary pump used in pumping liquids; that the gears are enclosed in a housing in which the pressures on opposite sides of each pumping gear are equalized. Respondent, an engineer of many years' experience, has been engaged in various manufacturing enterprises including the manufacture and development of spray guns and rotary meters, and since November, 1938, has conducted his business under the name of "Smith Precision Products Company." Appellant's invention is described in and covered by a patent issued to him and dated February 21, 1939. Some time in November of 1939 appellant entered the employ of respondent, who began the manufacture and sale of pumps covered by appellant's patent. Thereafter, on April 11, 1940, while appellant was employed by respondent, the parties entered into a written agreement, by the terms of which respondent agreed to pay appellant certain royalties under the conditions therein set forth and appellant agreed to assign to respondent the "sole right, title and interest in and to the said patent # 2,147,928, including the right to make, use and sell pumps or mechanisms made in accordance with the invention as claimed or in accordance with any improvements made by Seagren thereon"; royalty payments to be estimated on the net selling price of pumps only and to be made at stated intervals during the life of the agreement. It was provided that the life of the agreement should extend to the expiration date of the patent and it was also provided that respondent "shall have the right at any time to cancel

this agreement provided that he shall be liable for the payment of all royalties to such date of cancellation and shall on such cancellation reassign to Seagren all such rights as have been assigned by Seagren to Smith hereunder.''

The parties operated under the agreement until November, 1941, when appellant either left respondent's employ or was discharged therefrom, and on December 29, 1941, respondent gave appellant the following Notice of Cancellation of Agreement, to wit:

''Referring to that certain agreement entered into between us on or about the 11th day of April, 1940, and relating to United States Patent No. 2,147,928, dated February 21, 1939, you are notified that pursuant to the terms of that agreement I hereby cancel the agreement and I hereby transfer and reassign to you all right which you have heretofore assigned to me.''

The court found, in addition to the facts hereinbefore recited, ''that the royalties on the pumps which were manufactured and sold prior to December 31, 1941, and not previously accounted for by respondent, and on which royalties have not been paid, but on which royalties should have been paid, is the sum of $1,482.11, which sum is due, owing and unpaid.

''XV. That the defendant continued from and after December 31, 1941, to manufacture and sell the same pumps as he was theretofore manufacturing under the Seagren agreement, and at the trial of this cause on April 12, 1943, said defendant was still continuing to manufacture and sell said pumps. The defendant refused to furnish the plaintiff any statements of the number of pumps manufactured and sold after December 31, 1941, refused to pay to plaintiff any royalties on the pumps thus manufactured and sold and refused to, and still refuses to desist and refrain from manufacturing and selling said pumps. The defendant at no time has stopped the manufacture and sale of the same pumps that he was manufacturing prior to December 31, 1941.

''XVI. That the rates of royalties provided in the agreement of April 11, 1940, and heretofore set forth, are reasonable, and computing royalties at said rates on the pumps manufactured and sold from January 1, 1942 to April 9, 1943, the amount thereof is the sum of $1185.13. No part thereof has been paid.''

From the facts so found, the court decreed the following conclusions of law:

"1. The plaintiff is entitled to judgment against the defendant in the sum of $1,482.11, together with interest thereon at 7% per annum from January 20, 1942, to date of judgment herein, which represents the royalties on pumps manufactured and sold by the defendant up to December 31, 1941, and as to which he has paid no royalties.

"2. The Court is without jurisdiction to render any injunction or any judgment for royalties or other compensation as to pumps manufactured and sold after December 31, 1941, because the exclusive jurisdiction for the determination of the rights and duties of the parties hereto from and after said date, because of the notice of cancellation given by the defendant and reassignment by him of the patent to the plaintiff, is the District Court of the United States. Were it not for this lack of jurisdiction the plaintiff would be entitled to a judgment of this Court against the defendant in the additional sum of $1185.13 which represents royalties on the pumps manufactured and sold from December 31, 1941 to April 12, 1943, computed at the rates set forth in the agreement of April 11, 1940.

"3. As this court is lacking jurisdiction to give any relief for the acts and conduct of the defendant from and after December 31, 1941, the denial to plaintiff of an injunction and of a judgment for reasonable royalties or compensation for pumps manufactured and sold from and after December 31, 1941, is without prejudice to the plaintiff's right to seek redress and relief in the District Court of the United States, for the acts and conduct of said defendant from and after December 31, 1941."

Judgment was accordingly entered, and this appeal is prosecuted from that portion thereof which denies relief to appellant by way of injunction and royalties for pumps manufactured and sold subsequent to December 31, 1941.

Appellant contends. that the court fell into error in not distinguishing between a case under the patent laws, and an action arising out of a contractual relationship. "This is not a case where the plaintiff, either before or after the notice of cancellation, sets 'up a right under the patent laws as ground for a recovery', which is the test to be applied. (*Deakins* v. *Superior Court*, 90 Cal.App. 630 [266 P. 563].) He bases his rights to an accounting and an injunction upon a *contractual relationship* between him and the defendant.

He desires an accounting of *all* pumps manufactured and sold. As to those manufactured and sold *before* the notice of cancellation he is entitled to the royalties specified in the contract. As to those *after* the cancellation he is entitled to reasonable royalties or compensation on the theory of implied contract."

On the question of jurisdiction, it was held by our Supreme Court in *Pendleton* v. *Ferguson*, 15 Cal.2d 319, 326 [101 P.2d 81, 688] : "It appears to be the settled rule that while the federal courts have exclusive jurisdiction of all cases arising under the patent laws, such jurisdiction does not extend to all questions in which a patent may be the subject-matter of the controversy, for courts of a state may try questions of title, and may construe and enforce contracts relating to patents.

"'As we understand the issues in this case, they simply involve a contract relating to the title to certain patents. A determination of whether or not the relief prayed for should be granted must be arrived at by the application of rules and principles of equity cognizable in the courts of this state and in no degree whatever upon any act of Congress concerning patent rights.

"In the case of *Luckett* v. *Delpark, Inc.*, 270 U.S. 496 [46 S.Ct. 397, 70 L.Ed. 703], the late Chief Justice Taft, in an exhaustive opinion reviewed the cases on this subject and quoted with approval the rule announced by Chief Justice Taney in the case of *Wilson* v. *Sandford*, 10 How. 99 [13 L.Ed. 344], which appears to be directly in point in the case at bar. In the case of *Luckett* v. *Delpark, Inc., supra*, Chief Justice Taft said:

"'In *Wilson* v. *Sandford, supra*, a bill in equity was filed in a federal circuit court setting forth complainant's ownership of a patent, an assignment to defendants of a license in consideration of five promissory notes, with a condition of reversion to complainant on failure to pay any note. The bill averred that the first two notes were not paid, insisted that the license was forfeited by the failure and the licensor was fully reinvested at law and in equity with all his original rights, that the defendants were using the patented machine and were infringing the patent, prayed an account of profits since forfeiture, a temporary and permanent injunction, and a reinvestiture of title in the complainant. On demurrer, the bill was dismissed for lack of jurisdiction as not arising

under the patent laws. Chief Justice Taney, speaking for the Court, said:

" ' "The rights of the parties depend altogether upon common law and equity principles. The object of the bill is to have the contract set aside and declared to be forfeited; and the prayer is, 'that the appellant's reinvestiture of title to the license granted to appellees, by reason of the forfeiture of the contract, may be sanctioned by the Court', and for an injunction. But the injunction he asks for is in consequence of the decree of the Court sanctioning the forfeiture. He alleges no ground for an injunction unless the contract is set aside. And if the case made in the bill was a fit one for relief in equity, it is very clear that whether the contract ought to be declared forfeited or not, in a court of chancery, depended altogether upon rules and principles of equity, and in no degree whatever upon any act of Congress concerning patent rights." ' "

Again, in *Davis* v. *Kittle Mfg. Co.*, 134 Cal.App. 254, 262 [25 P.2d 253], the court quoting from 20 R.C.L., paragraph 63, pages 1181, 1182, said:

" ' . . . where an action or suit is brought on a contract of which a patent is the subject-matter, either to enforce the contract or annul it, the case arises on the contract and not under the patent laws, and a state court has jurisdiction. Accordingly, an action may be maintained in a state court to enforce the payments of royalties or license fees— and while it is elementary that a state court has no jurisdiction with respect to a case arising under the patent laws, it is equally well settled that a case involving patent rights does not necessarily 'arise under the patent laws', and that a state court has jurisdiction to determine questions relating to patent rights whenever such questions arise incidentally or collaterally to a main cause of action over which a state court has jurisdiction. '. . . The cause of action is based upon contract, and the matter of patent rights is incidental to the main issue. It therefore follows that our state courts have jurisdiction over the subject matter of this controversy."

Respondent urges—and it was apparently upon this theory that the trial court declined to take jurisdiction of that part of appellant's cause of action which arose after the cancellation of the contract—that the contractual relation between the parties was terminated by the cancellation and therefore

appellant's only redress is by an action for infringement in the federal courts.

However, in the case of *In re Michigan Motor Specialties Co.*, 288 F. 377, which involved a license contract made terminable by its terms in the event the licensee ''discontinues its business through insolvency . . . bankruptcy . . . or any other cause,'' it was held that the license terminated in accordance with its own provisions at the time of the adjudication in bankruptcy and the appointment of a receiver, and that the trustee in bankruptcy, who continued the manufacture of the patented articles after the termination of the licensing agreement was liable upon an implied contract to pay a reasonable royalty to the licensor.

In the case of *In re Norcor Mfg. Co.*, 109 F.2d 407, the Norcor Company by the terms of a written contract agreed to pay one Schmitt a certain stipulated royalty for the exclusive right to manufacture and sell chairs on which said Schmitt had pending an application for a patent. The conditions of the contract were complied with and the contract remained in effect until June 1, 1933, when it terminated by its own terms. Meanwhile on June 28, 1932, the Norcor Company was adjudged a bankrupt and the directors thereof were appointed receivers to carry on the business, at which time all creditors, including Schmitt, were enjoined from taking further action on their claims against the company, although Schmitt by decision of the Supreme Court of Wisconsin was adjudged to have a valid claim antedating the receivership in an amount of $50,514.67. This latter adjudication included the amount due Schmitt under the terms of his contract from June 1, 1929 to June 1, 1933. Thereafter, however, the receivers continued the manufacture of the product described in the contract, which comprised the major portion of the company's business. During this period (subsequent to the expiration of the contract) as before, the receivers enjoyed the sole and exclusive right in respect to manufacture and sale of the chairs, and also during this period Schmitt was enjoined from prosecuting any claim for such use. Schmitt sought to recover the sum of $19,816.91 as royalties for the use of his invention subsequent to the expiration of the contract. The receivers took the position that after the expiration of the contract Schmitt was not entitled to royalties for the use by them of his invention,

urging that his claim with respect to the period in question was based upon infringement and that the special master appointed to hear the case had no jurisdiction to consider such a claim. Said master decided against this contention, stating: "I am of the opinion that this is fair and equitable, and that the receivers were operating under an implied contract to pay the same . . . I find that after the expiration of the fourth year of the Schmitt contract, that claimant is entitled to 5% of the invoice of the chairs made and sold by the receivers."

In upholding the special master's decision, the Circuit Court of Appeals for the Seventh Circuit in the instant proceeding held (p. 409): ". . . we are satisfied the Master reached the proper conclusion. We do not think the opposing contention is sustained by any authorities to which our attention has been called, and certainly it is not sustained by logic or equitable consideration. When the receivers were appointed in the State Court . . . they had knowledge of the contract—in fact, worked and complied with its terms until its expiration. Prior thereto, Schmitt had been enjoined from taking any action looking toward the protection of his rights. The receivers continued, after the expiration of the contract, to manufacture the product the same as they had before. We see no reason why he should not be entitled to reasonable compensation for the use of his property, his invention. No question of infringement was involved—the estate is liable under the circumstances by reason of an implied contract."

Respondent cites the case of *Fageol & Tate* v. *Baird-Bailhache Co.*, 138 Cal.App. 1, 4 [5 P.2d 75], as authority for his contention heretofore stated. In that case the licensing agreement gave the *licensors* the right to terminate the agreement in the event of a breach thereof by the licensee and its failure to comply with the terms thereof within thirty days after receipt of a written notice from the licensors of such breach. The court there held: "The provision for the termination of the contract upon default of the licensee was for the benefit of the licensors. Upon default of the licensee the licensors could either terminate the contract by giving the thirty-day notice therein provided for or they could elect to continue the contract in force and insist on the payment of the royalties as they accrued. They could not do both. Having elected to terminate the contract as of September 25, 1925, the con-

tract came to an end on that date and neither party thereafter could obtain any new or further rights under it. The license of appellant to manufacture and sell the patented articles ceased on that date and their obligation to pay future royalties ceased as well.''

Such holding is not controlling in the instant case, where the licensee saw fit to cancel the contract and continued to manufacture and sell the pumps to the detriment of licensor.

From what has heretofore been said in this opinion, it is clear that respondent is liable to appellant upon the theory of implied contract based upon the well-recognized and settled principle that a person shall not be permitted to enrich himself unjustly at the expense of another. (17 C.J.S., pp. 322, 323.)

Clearly, the trial court had jurisdiction of that portion of appellant's cause of action which arose after the cancellation of the agreement, upon the theory of implied contract. Moreover, it also had jurisdiction to grant an injunction, and upon the authority of *Holley* v. *Hunt*, 13 Cal.App. 2d 335 [56 P.2d 1240], and *Pendleton* v. *Ferguson*, 15 Cal. 2d 319 [101 P.2d 81, 688], injunction is a proper remedy under the facts presented by the instant litigation.

For the reasons stated, that portion of the judgment appealed from is reversed, and the lower court is directed to enter judgment for plaintiff in accordance with its finding of fact numbered XVI, for the additional amount as set forth in said finding.

Doran, J., and White, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 8, 1944. Edmonds, J., voted for a hearing.