[Civ. No. 19855. Second Dist., Div. One. Mar. 31, 1954.]

LORENZO DEL RICCIO et al., Respondents, v.
PHOTOCHART (a Corporation), Appellant.

Patrick D. McGee for Appellant.

Charles L. Nichols, Ivan Miller and Anthony T. Carsola for Respondents.

WHITE, P. J.—This is an action to recover royalties under a 17-year license agreement covering certain camera devices and methods.

Plaintiff Del Riccio is an inventor and met defendant Bogart Rogers, the prime figure in defendant partnership and corporation, in 1937, at a motion picture studio in Hollywood. Del Riccio had been experimenting with a camera especially adapted to photographing moving objects. Rogers had been active in organizing Del Mar Race Track, and plaintiff Del Riccio told him that the latter's new camera would improve photo-finish photographing. Later, plaintiff Del Riccio and the individuals named in the complaint herein as defendants, formed a partnership to exploit Del Riccio's invention of an open-slit camera for photographing race finishes. Plaintiff Del Riccio owned a one-half interest in the partnership.

The original camera used at Del Mar Race Track in 1937 had a slit with parallel sides. All interested in the venture recognized that this type of photography was an old art.

When this demonstation in 1937 disclosed that the parallel slit did not produce accurate results, plaintiff Del Riccio set about to solve the problem through the use of a tapered or angular slit, known as the V-slit. Following the completion of the first camera with parallel slit, four additional cameras were built, each provided with the V-slit.

Plaintiff Del Riccio believed that the V-slit was a new invention and patentable. The inventor also invented and introduced into the four later cameras a special control or timer and a film carrier.

On March 20, 1939 (prior to making the license agreement on June 25, 1941), an application for a patent on each of said inventions was made by respondent Del Riccio. However, before a patent issued on the first application, Del Riccio was advised by the patent office that his application would have to be divided because it contained an application for both a patent on a *camera* and a patent on a *method* of photographically recording the order of passage of moving objects. The division was made and resulted in the issuance of two patents, one entitled the "Camera," and the other entitled "A method of photographically recording the order of passage of moving objects." The *method* patent was reissued with the same title on May 20, 1947, and is the patent which was the subject of litigation in the federal courts in 1950, to be hereinafter referred to.

As heretofore noted, prior to the execution of the license agreement, plaintiff Del Riccio and the other persons interested in the above mentioned partnership known as The Photochart (which was the predecessor of defendant corporation) had banded together and pooled their efforts and money toward perfecting and promoting the Del Riccio camera and its use. In that venture they were copartners, Del Riccio owning a one-half interest.

Prior to the making of the licensing agreement differences had arisen and existed among the partners. In order to compose and compromise these differences, a license agreement was entered into on June 25, 1941. The pertinent parts of said agreement, insofar as this litigation is concerned, are:

1. Included in the benefits which accrued to the licensee partnership were,

(a) License for 17 years to use the camera with angular slit, the speed control and the film carrier described therein, including the five cameras then in use.

(b) Acquired the 50 per cent proprietary interest of respondent Del Riccio in the extant partnership and thereafter the remaining partners comprising the partnership owned the entire proprietorship, and respondent Del Riccio owned and had only the reserved royalty.

(c) Acquired all cameras, good will, technical knowhow, engineering drawings and data, all existing patent protection and some fixtures and parts.

(d) Acquired obligation of respondent Del Riccio as adviser, consultant and as director of any succeeding corporation.

(e) Eliminated competition of respondent Del Riccio for the period of five years, together with right to use any future improvements of respondent Del Riccio.

2. Plaintiff Del Riccio suffered the following correlative detriments,

(a) Surrendered right to license others than licensee;

(b) Surrendered 50 per cent partnership interest and accepted royalty position instead;

(c) Surrendered management to partnership licensee and set about other business activities;

(d) Obligated self to serve licensee as adviser, consultant and possible director;

(e) Agreed to forego competition with licensee for said period of five years.

The partnership operated under this 1941 agreement until April 23, 1946, when they executed a supplemental agree-

ment which compromised litigation then pending between them and specifically incorporated United States Patent No. 2382617 (hereinafter referred to as Patent No. 617), the *method* of photographically recording the order of passage of moving objects. The parties continued to operate under this agreement until 1949, when, in an action in the superior court of Los Angeles County, it was held that under the licensing agreements plaintiff Del Riccio could compete with his licensee, and that defendant licensee was not obligated to use the patented camera.

On September 16, 1947, defendant Photochart and plaintiff Del Riccio joined as plaintiffs in a patent infringement action against Photo Patrol, Inc., and others, brought in the United States District Court for the Northern District of California. Tendered as an issue in the original complaint filed in the federal court were all patents mentioned in the original license agreement as well as *method* patent No. 617, and reissue patent No. 22,881 (hereinafter referred to as Patent No. 881). By the time of trial all issues as to all patents had been withdrawn except those involving claims, 1, 2, 7 and 8 of No. 881 (the reissue patent). The findings in that case described the disputed *method* in paragraph XII as follows:

"Reissue patent No. 22,881 relates to a method of photographing the finishes of races by positioning a camera above and to one side of a finish line or other given line of a race track and the photographing of the contestants as they pass said line upon a continuously moving strip of film positioned behind a narrow aperature";

And in paragraph XVIII: "The precise method patented involves positioning the optical axis of the lens of the camera in alignment with one edge of the slit and with the finish line or some other given line."

In its ruling the federal court held: "Reissue patent No. 22,881 is invalid because the subject-matter of said patent does not constitute invention and the subject-matter of said patent was old in the art more than one year before the Del Riccio patent application was filed.

"The method patents, Reissue patent No. 22,881 and original patent No. 2,382,617, involve nothing more than the normal expected and only use of the camera covered by camera patent No. 2,320,350."

By amendment of April 14, 1950, paragraph XXIII was changed to read:

"The patents, other than Claims 1, 2, 7 and 8 of Reissue

Patent No. 22,881, in suit as set forth in Finding IX hereof, were withdrawn by the Plaintiffs, and hence it is not necessary to pass upon the validity thereof.''

The final judgment and the amended judgment are to the same effect as the findings. This decree was affirmed on June 11, 1951, by the Ninth Circuit Court of Appeals (189 F.2d 625), certiorari denied by the Supreme Court on November 5, 1951 (342 U.S. 867 [72 S.Ct. 107, 96 L.Ed. 652]), and rehearing denied on January 2, 1952 (342 U.S. 907 [72 S.Ct. 290, 96 L.Ed. 679]). ■ The narrow scope of the ruling of the Circuit Court of Appeals appears at page 627 thereof, *supra*, as follows:

''In the posture the case reaches us we are concerned only with claims 1, 2, 7 and 8 of Reissue Patent No. 22,881, and with the appeal by the defendants from the order of the district court denying attorneys' fees.''

■ As observed by the trial judge in the instant proceeding, ''Of course, any language of the opinion which goes beyond the exact matter in issue counts for naught in the law of res judicata. (*Southern Pac. Co.* v. *Edmunds,* 168 Cal. 415, 418 [143 P. 597] ; 15 Cal.Jur., Sec. 197, p. 150; 50 C.J.S., Sec. 726, p. 215.)''

Defendant Photochart, Inc., paid the agreed royalties, with slight exceptions, until the month of October, 1951, some three months after the affirming decision by the Court of Appeals in the action discussed above, and some two months before certiorari was denied by the United States Supreme Court. Under date of December 11, 1951, plaintiffs notified defendant Photochart of its failure to pay and thereafter, on February 1, 1952, commenced this action. Plaintiffs' complaint embraced three causes of action: (1) action at law for royalties due and unpaid; (2) suit in equity to determine whether all past royalties had been duly reported for payment and to embrace royalties accruing after the commencement of the action; and (3) suit in equity for declaratory relief to the effect that the license agreement, as amended, was and is a valid, subsisting contractual obligation between defendant and plaintiffs. Other than tendering general issues, defendant's answer set forth two primary defenses, as follows:

1. The original license agreement and the supplemental agreement were executed ''without any consideration whatever'';

2. The only valuable consideration moving appellant's predecessor to enter into the license agreement, as amended,

were the four claims in the reissue patent invalidated by the federal decision; also, that such sole consideration encompassed freedom and clearance from competition of any persons; and that by reason of the failure of such consideration, defendant's further performance is excused.

Following trial before the court sitting without a jury, judgment was rendered as follows:

"(1) That PLAINTIFFS do have and recover of and from the DEFENDANT PHOTOCHART, a corporation, the sum of seven thousand seven hundred ninety-three dollars and seventy-five cents ($7,793.75), together with interest on the sum of two thousand two hundred forty-seven dollars and ninety-nine cents ($2,247.99) thereof since January 1, 1952.

"(2) That PLAINTIFFS are entitled to declaratory relief and judgment, as follows:

"(a) That the license agreement dated June ·25, 1941, and the supplemental agreement dated April 23, 1946, and each of them are valid and subsisting contractual obligations between PLAINTIFFS and DEFENDANT PHOTOCHART.

"(b) That DEFENDANT PHOTOCHART is obligated to pay any and all royalties therein provided to be paid by it to PLAINTIFFS in the same manner as heretofore paid by it prior to October 1, 1951.

"(c) That DEFENDANT PHOTOCHART is obligated to use its best efforts to perfect, publicize and perpetuate the business of the photochart camera described in said agreements in the United States of America and through the world upon the best possible terms which are available.

"(d) That PLAINTIFF DEL RICCIO has heretofore performed all and every of the obligations on his part to be performed in respect of said license agreement and said supplemental agreement.

"(e) That the term of said license agreement and said supplemental agreement shall continue to and including the 13th day of August, 1962, being the period of seventeen years from and after the date of said patent No. 2,382,617."

From the foregoing judgment as entered defendant Photochart, Inc., alone prosecutes this appeal.

As a first ground for reversal, appellant contends that the findings are not supported by the evidence. In this regard it is urged that the court erred in finding that only certain claims of Reissue Patent No. 881 were invalidated by the federal court decision. With this claim of appellant we cannot agree. While the original complaint in the federal

court case tended an issue as to all patents which has grown out of the applications mentioned in the original license agreement, as well as method patent No. 617 and Reissue Patent No. 881, nevertheless, when the time for trial arrived all the issues as to all patents had been withdrawn except those involving claims 1, 2, 7 and 8 of Reissue Patent No. 881. By the amendment of April 14, 1950, all claims other than 1, 2, 7 and 8 were withdrawn by plaintiffs and as the federal court said, ". . . hence it is not necessary to pass upon the validity thereof." The narrow scope of the ruling of the United States Circuit Court of Appeals is shown by the preceding quotation from its opinion.

As was said by the learned trial judge in the instant case in his memorandum of ruling, after an exhaustive review of pertinent federal cases, "Factually, defendant's position is not sustained. The argument involves the method of use of a parallel slit and an angular or V-slit in photographing the finish of a race. The evidence shows that the claims which were held invalid related to method only and were broad enough to cover the use of a parallel slit, though not necessarily excluding the use of the V-slit. The parties, the District Court and the Circuit Court of Appeals had no trouble in severing the invalid method claims from the other portions of the patent. Indeed defendants brief repeatedly refers to all portions of the patents, other than claims 1, 2, 7 and 8 of No. 22881, as valid (see page 16, line 8; page 27, line 5; page 27, line 32; page 30, line 4); and at page 30, line 26, counsel say that the method patent 'was invalidated in all respects except where used in conjunction with the additional limited step of the V-slit.' "

 Appellant next attacks finding XII, which reads:

"Defendant Photochart has made and used and continues to make and use photochart cameras which are substantially similar and equivalent to the camera described in said license agreement and said supplemental agreement used by the predecessors of Defendant Photochart following the making of said agreements."

Appellant insists that this finding is contrary to the only evidence in the record relative to the camera which it claims shows that since World War II appellant has not used the Del Riccio camera. In its brief appellant asserts that the evidence clearly shows that since the end of the war it has not used any of the patented devices enumerated in the contract, but admits that it "has at all times since the contract

was signed, used the *method* patent," but contends that it was this *method* patent that was invalidated by the aforesaid federal court decision.

We are persuaded that a complete answer to appellant's claim is contained in the memorandum of ruling rendered in the court below, wherein it is said:

"Concerning the contention of nonuse it must be remembered that we are discussing a question of failure of consideration, and that defense is never good when due to the act of the party claiming the defense; also that the failure must relate either to a basic consideration to be rendered at the time of the agreement or to failure to perform some of its expressed or implied promises. Adjustment of existing differences between plaintiff and the other partners and relinquishment of plaintiff's interest in the partnership assets furnished substantial initial consideration for the original license agreement; and the supplemental agreement was a compromise of existing litigation between the parties, thus affording new and additional consideration for the entire amended agreement.

"The right to use was granted on June 25, 1941, and exercised until 1946 or 1947. The implied promise of a continued right to use was never breached unless a loss of patent upon method of application of the parallel slit worked that result. Inherent in the license was a promise of use of that method without an ouster or eviction from other persons having lawful right (Ellis on Patent Assignments and Licenses, Sec. 810, p. 813; Walker on Patents, Sec. 384, p. 1494; *Drackett Chemical Co.* v. *Chamberlain Co., supra*), but whether the particular promise constituted a major, a material or an inconsequential consideration is another question.

"The original license agreement covered this method only by implication; indeed, the fact cannot be gathered from the document, which refers only to the camera in paragraph (1) on page 1; and there were two other devices included, the speed control and the film carrier; also the contemplated British patents upon 'the devices indicated above.' It does not appear that the present point was ever raised until after the patent suit was lost. On March 26, 1941, Mr. Rogers in a letter to Mr. Swarts and Mr. del Riccio (Ex. 14) said: 'The Photochart's single asset is the camera, and its source of income is the camera.' "

After quoting from a certain report rendered by a consulting physicist of the Massachusetts Institute of Technology

and correspondence as well as statements of Rogers, president of appellant corporation (all of which were introduced into evidence), the trial judge continued as follows in his memorandum of ruling,

"The emphasis, it will be observed, is upon the camera, not the method. . . .

"In none of this is there any emphasis upon or reference to, importance of a method patent, and especially no reference to any value in a patent upon method of use of the parallel slit.

"When Patent 2,382,617, the method patent, was incorporated into the supplemental agreement of April 23, 1946, it was for the expressed purpose of making certain that the term of the license would extend for 17 years from the date of that patent. In their conversations on the subject the parties did not mention any special value inhering in the method. From the beginning defendant and its predecessors were cognizant of the fact that slit photography is an old art, that its ordinary practice had involved the parallel slit, which was of doubtful patentability. There is nothing in the record to suggest that they ever attached any importance to the method of its adjustment with the finish line and the optical axis of the camera until the trial of the infringement action and later when called upon to resume payment of royalties. On the contrary, Mr. Rogers testified that the original camera had only the parallel slit, that it and the later cameras, having the V-slit, were used up to the time of the license agreement, and that there was no appreciable difference in the results obtained through use of the different types of slit. He also said that del Riccio told him after the first Del Mar season, that the parallel slit was not accurate or satisfactory. Plaintiff del Riccio testified that he never told Rogers that the parallel slit was the important part of the invention or patent, and this Mr. Rogers did not deny.

"Moreover, it is what both parties may be found to have considered to be material that is determinative. The court in *Automatic R. Mfg. Co.* v. *Hazeltine Research,* 176 F.2d [799] at 807, said in this regard:

" 'Although Automatic did not in this court rely on a defense of fraud or misrepresentation, Automatic does claim that the aforesaid ten patents litigated adversely to Hazeltine were the ones in which Automatic had been chiefly interested; that the judgments against Hazeltine demonstrate the worthlessness of these patents, and that consequently

there has been a failure of consideration relieving Automatic of its obligations under the license agreement.

" ' . . . . . . . . . . .

" ' 'The mere fact that Automatic may have regarded ten particular patents, out of the more than 700 patents and patent applications covered by the license agreement, as the most important ones licensed, in no sense means that *both* parties regarded those patents as the "substance" of the agreement and contracted accordingly.'

"This court must hold that the failure of consideration, if any at bar, was only partial and involved but a relatively immaterial phase of the entire consideration. This, of course, disposes of the argument that there cannot be any severance or allocation within the rule suggested in *Ross* v. *Fuller & Warren Co., supra.* And the general rule as to partial failure of consideration becomes applicable.

"17 C.J.S., Sec. 130, p. 477:

" ' 'Where there is a failure of a part of a lawful consideration, the part which failed is simply a nullity and imparts no taint to the residue. In such a case, as no particular amount of consideration is required, the promise may be enforced. In other words, if there is a substantial consideration left, it will be sufficient to sustain the contract.'

"To the same effect, see *King* v. *Moreland,* 116 Cal.App. 356, 358 [2 P.2d 576]; Restatement of Law of Contracts, Sec. 275, p. 402. In any event the heart of the contract at bar did not fail and therefore the defense under discussion cannot prevail."

Appellant next assails subdivision (g) of finding XII which is as follows:

". . . and further, that DEFENDANT PHOTOCHART has not suffered any substantial eviction of the rights promised or granted to it in or by said agreements." Appellant argues that this finding is directly contrary to the only evidence in the record relative to eviction, and which, it is contended, shows conclusively that after the aforesaid federal court decision, appellant's licensees refused to make payments for use of an invalidated patent, and that competitors were invading the field formerly denied to them. ▮ While it appears to be the law that where an *exclusive* license is granted and the patent is held invalid by the courts, the licensee may successfully claim an eviction, the argument is inapplicable where as here, the license is nonexclusive. The futility of the claim here advanced by appellant is clearly shown in the

portion of the trial court's memorandum of ruling hereinbefore quoted.

We find no merit in appellant's argument that the amounts of royalty found to be due and payable from it to respondents were erroneous. The claim that the court made no findings on the issues presented in this regard other than the general findings numbered VII and VIII is answered by reference to Finding V in which the court found that from and after October 1, 1951, appellant failed and refused to make further payments of royalties or to furnish the royalty statements required by the agreement. Finding VI reflects that the amounts determined upon as to royalties due were arrived at through an accounting, while Finding VII sets forth the accounting for the period from January 1, 1952, to the date of judgment, and Finding VIII shows the sum total of the items set forth in Findings VI and VII. It necessarily follows that there was no failure to find on any material issue, nor does any confusion or uncertainty appear in the method of computation or the accuracy of the results.

Appellant sets forth six findings and urges that they are clearly conclusions of law, that they are improperly designated as findings of fact, and should be disregarded in determining whether the findings are supported by the evidence. Whether the findings mentioned are or are not conclusions depends on the nature of the evidence (*Wendt* v. *Gates*, 102 Cal.App. 342, 343 [283 P. 312]). Applying the rule that although minor inconsistencies, *legal conclusions* and evidentiary matters appear in the findings, they must be liberally construed and resolved in favor of upholding rather than defeating the judgment (*Woodbine* v. *Van Horn*, 29 Cal.2d 95, 109 [173 P.2d 17]), we are constrained to hold, from a consideration of the evidence herein that appellant's contention in this regard lacks substantiality.

Appellant's next contention is that Finding XII (d) is erroneous because it finds, in effect, that the evidence disclosed no grounds whatever whereby appellant should be or is excused from performance of the license agreement, and the supplemental agreement, including the obligation to pay royalties. By its answer appellant admitted that respondents were asserting, "that there is *no proper or valid cause or reason of any kind, including the decision invalidating said patent, or any other cause*, why appellant should not perform under said agreement and pay plaintiffs the sums of royalties therein provided." (Emphasis added.) Since this was an

issue raised by the pleadings and was part of the controversy to be settled by the court, we perceive no error in the fact that the court found thereon.

Appellant insists that the court erred in permitting respondents to introduce evidence of the existence and dissolution of the partnership before or at the time of making the agreements here under consideration. ▉ It is, of course, axiomatic that parol evidence may not be received to vary, add to or subtract from the terms of a written agreement, but it is admissible to explain what the parties meant by what they said. This is true because the very purpose of all interpretations is to try to find the true intent of the contracting parties. ▉ And except where it may tend to contradict the contractual considerations, true consideration may always be shown by parol evidence (*Simmons* v. *California Institute of Technology*, 34 Cal.2d 264, 272 [209 P.2d 581]). ▉ In the instant case, as pointed out by respondents, other than the mutual promises implicit in it, the license agreement does not mention the consideration supporting it except by a passing reference in paragraph 4, as follows:

"The parties to this agreement recognize that this agreement is made because of *considerations* existing between Licensor and the persons composing Licensee." (Emphasis added.)

It was, therefore, proper to show that if and when respondent Del Riccio yielded up in favor of the licensee partnership (appellant's predecessor) the 50 per cent proprietary partnership interest, such detriment to him in promise of the royalty payments would constitute the consideration referred to in the above quoted paragraph 4, and that the corresponding benefit to the licensee partnership would likewise comprise such consideration. The admission of this proof cannot be held to be reversible error.

Appellant urges that the court erred in giving judgment for royalties accruing after December 1, 1951. It is contended that the agreements terminated and ceased to have any binding effect on appellant for either or both of the following reasons:

(1) Upon the failure of appellant licensee to pay to the respondents licensor the royalties due for the months of October, November and December, 1951, or

(2) Ten days after the respondents gave notices to appellant licensee of this failure to pay such royalties due,

which notices were given on November 21, 1951, and on December 11, 1951.

We are persuaded that appellant's breach did not *ipso facto* terminate the contract. True, under it respondents were given the right to terminate the contract. However, in the case now before us, the pleadings reflect that by their first cause of action respondents sought recovery of the past due royalties, alleged prior demand therefor and refusal by appellant to pay. The latter's answer admitted such non-payment. We cannot agree with appellant that when respondents alleged nonpayment and prayed the court to enforce such payment, they thereby elected to terminate the license. And nowhere in the answer of appellant do we find any allegation that such nonpayment or demand for payment by respondents constituted any election by the latter to terminate the agreement. The case of *Fageol & Tate* v. *Baird-Bailhache Co.*, 138 Cal.App. 1 [5 P.2d 75], relied upon by appellant does not aid it. In the cited case, the notice of default sent by the licensor to licensee definitely stated, "Unless you do pay all royalties due and owing . . . the undersigned *will consider the said contract as being, and having been, violated and terminated by you.*" (Emphasis added.) That the licensor in the case just cited thereby elected to *terminate* is manifest. In the case at bar, however, respondents elected not to terminate but to sue for the defaulted royalties.

Appellant's next complaint is that it was error for the court to award judgment for royalties accruing after December 31, 1951. In this regard it is urged that the trial court was without authority to take the accounting beyond the date of the commencement of the present action. As the basis for the accounting respondents alleged:

". . . defendants have failed and neglected fully and truly to account to plaintiffs for the gross revenues received by defendants for the. use of said license device and to account to plaintiffs for the full amounts of royalties due and payable to plaintiffs by reason of such gross revenues."

And in the prayer, after asking that defendants make discovery and disclosure of all gross revenues derived by them "and the royalties payable by defendants to plaintiffs in accordance with said license agreement and said supplemental agreement," respondents then prayed that:

"Defendants, and each of them, make true accounting to

plaintiffs for *any and all royalties due or payable* by defendants to plaintiffs.'' (Emphasis added.)

Under the pleadings herein and without the necessity of filing supplemental pleadings it was the duty of the trial court, under the circumstances here presented, to adjust the rights of the parties up to the time of the entry of judgment and to leave nothing open to further litigation. One of the attributes of equity is its power to do complete justice (*Kohn* v. *Kohn,* 95 Cal.App.2d 708, 710, 716, 717 [214 P.2d 71]; *Union Oil Co.* v. *Mutual Oil Co.,* 19 Cal.App.2d 409, 412 [65 P.2d 896]; *Rhodes* v. *Ashurst,* 176 Ill. 351 [52 N.E. 118, 120]). We find no error in the scope of the accounting.

It is further contended by appellant that the court erred in failing to declare the contract sued upon illegal and withholding all relief to respondents. Appellant insists that the action of the federal court in declaring invalid Reissue Patent No. 881 created a supervening illegality in that the respondents' basis for demanding the payment of royalties after such decision, was predicated on the remaining valid patent claims covered by the license agreement, as well as upon the invalid claims.

It is argued that the established public policy of our patent laws dictates a refusal to enforce the provisions of a royalty agreement covering both patentable and nonpatentable inventions, methods or products, because to do so would extend the monopoly of the patented product to create another monopoly or restraint of competition on the unpatented products not within the patent law.

It would unduly prolong this already lengthy opinion to discuss in detail the cases cited by appellant in support of its contention. All of these authorities were considered by the United States Supreme Court in the case of *Automatic R. Mfg. Co.* v. *Hazeltine Research, Inc.,* 339 U.S. 827, 830, 834 [70 S.Ct. 894, 94 L.Ed. 1312], wherein it was held that there is no objection to a license which bases royalty upon patented or unpatented devices if it stops there, as it did in the case at bar. The case just cited also holds that a licensee under a patent license agreement may not challenge the validity of a licensed patent in a suit for royalties due under the contract (see also *Bettis Rubber Co.* v. *Kleaver,* 104 Cal.App.2d 821, 826 [233 P.2d 82]). Furthermore, the federal decision in question here invalidated only four of the twelve claims in the aforesaid Reissue Patent No. 881 and did not allude to the valid patents described ·and

embraced in the original license agreement. Therefore, we are not confronted with a situation where either of the patents has been adjudicated to be invalid, but only a portion of one of them has been invalidated. Under such circumstances, when appellant argues that the effect of the federal decision was to inject illegality into the license agreements, it runs afoul of the rule announced in the case of *Automatic R. Mfg. Co.* v. *Hazeltine Research, Inc., supra.* The claim of illegality in the contract sued upon herein cannot be sustained.

Much of what we have said in the preceding discussion of illegality is applicable to appellant's claim of illegality based on the contention that the contracts are in restraint of trade, and establishes that such claim is unavailing. Appellant's claim in that regard is based upon the following language appearing in the agreement: "that it (licensee) will not sell, license, manufacture or otherwise exploit photographic equipment based on the principle of slit photography except for use in determining the results or finishes of horse and other forms of racing."

As pointed out by respondent, ". . . this language was calculated to, and it did, provide, in essence, that appellant was granted right of use of the V-slit camera for race finishes and for no other purposes and the licensor, who admittedly had other inventions and other uses in mind, reserved to himself the right to use even the V-slit camera in all other adaptations than race finishes."

Appellant argues that the foregoing provisions in the contract are invalid because they attempt to secure for the licensor a limited monopoly in the unpatentable field of open slit photography, but as the trial court observed in its memorandum of ruling, the licensee simply agreed to use and promote the Del Riccio V-slit camera and not to use any other or different camera in race finishes. We find nothing in the agreement that seeks to use the patent as a means of obtaining a limited monopoly of unpatented devices and thereby becoming an instrument for restraining trade or commerce.

Appellant next charges that the court erred in extending the agreements to August 13, 1962, to wit, 17 years from the date of issuance of Patent No. 617 (August 14, 1945).

The original license provided a term of 17 years "after the issuance of patents upon the devices hereinabove referred to." As noted above, Patent No. 617 was issued August 14,

1945, and about eight months thereafter (April 23, 1946), the supplemental agreement was made. The latter instrument expressly included Patent 617 within its provisions and did not undertake to provide any different term or expiration date than that set forth in the original license.

As the trial judge pointed out in his memorandum of ruling, when Patent No. 617, the method patent, was incorporated into the supplemental agreement of April 23, 1946, "it was for the expressed purpose of making certain that the term of the license would extend for 17 years from the date of that patent." And, as pointed out by respondents, "Still later (May 20, 1947) appellant procured issuance of the reissue patent but so far as the record shows, this reissue did not affect the expiration date of the license; and if it had any effect, the term of the license would have been extended to May 19, 1964, and it is obvious appellant will not be inclined to urge this conclusion."

With regard to this assignment of error, appellant's argument is predicated upon the proposition that under the aforementioned federal court decision Patent 617 was entirely invalidated and that consequently, it was error for the court to fix the term of the license by that patent. True, the first six claims in the reissue patent were the same as in Patent 617, but neither the reissue patent nor all of the six claims in Patent 617 were adjudicated to be invalid. As hereinabove set forth, only claims 1, 2, 7 and 8 of the reissue patent and only claims 1 and 2 of Patent 617 were invalidated. The federal court decision did not affect or adjudicate the remaining claims in both patents. As set forth by respondents, "The only cases cited by appellant pertain to agreements to extend royalties beyond the term of patents. Since we are not concerned with this situation, it would appear to be supererogatory to discuss or analyze these cases at length."

On the other hand, the cases of *Ross* v. *Fuller & Warren Co.*, 105 F. 510, 512, and *Automatic R. Mfg. Co.* v. *Hazeltine Research, Inc.*, *supra*, sustain the holding of the trial court extending the terms of the license and the obligation to pay royalties to 17 years from the date of issuance of Patent 617.

Appellant insists that the denial by the court of its motion to file an amended and supplemental answer to respondents' complaint constituted an abuse of discretion. It is argued that appellant could not have anticipated that

the court would decree an accounting for the period subsequent to the filing of the complaint and to the date of judgment, since the allegations in respondents' complaint referred to the royalties due during the months of October, November and December, 1951, and months prior thereto.

Appellant concedes that while the amendment of a pleading may be made at any time before judgment, permission to file such amendment rests in the sound discretion of the court, citing *Feigin* v. *Kutchor*, 105 Cal.App.2d 744, 748 [234 P.2d 264], wherein it is said, "this discretion will not be interfered with upon appeal except in cases of its manifest abuse."

In the instant case the record reflects that appellant was apparently in accord with the theory of the extended accounting at the trial, and even stipulated up to the time the issue was submitted to the court to fix the amount, that the accounting would extend through July, 1952. It was only when after an adjournment, the court reconvened to fix the amount, that appellant attempted by amendment to lay the groundwork for an objection to the accounting for any period after the action was commenced. Under these conditions, we are not disposed to say that the ruling of the court amounted to a clear abuse of discretion, and therefore, we cannot disturb such ruling on appeal (*National etc. Co.* v. *Buttonlath etc. Co.*, 128 Cal.App. 500, 504 [17 P.2d 1012]).

Following a denial of the motion to amend its answer, appellant made an offer to prove by documentary evidence the termination of the agreements by the act of the respondents, and further offered to prove that respondents had failed to file a timely disclaimer notice with the United States Patent Office, thereby invalidating reissue Patent No. 881 in its entirety, and further offered to prove that the contract was illegal. The proffered evidence was refused admission by the court. Appellant next asserts that respondents did not file a disclaimer until six months after the present action was commenced and that therefore, the filing thereof could not have been known to appellant until that time. In the language of appellant's brief, "Broadly speaking, a statutory disclaimer is for the purpose of striking something from a patent, either in the text of the specification or in the claims. The simplest use of a disclaimer is bodily to strike out a claim or claims of a patent, whether the latter is an original or a reissued patent.

"Revised Statutes, Sections 4917 and 4922 provide for the filing of disclaimers, and they should be read together as covering the same subject. Section 4917 provides that whenever a patentee has claimed more than that of which he was the original inventor, his patent shall be valid for the part that was his own, and that he may make disclaimer of such parts as do not belong to him. It is provided that the disclaimer shall be in writing and shall be recorded in the Patent Office upon payment of a fee, and thereupon the disclaimer shall be part of the original specification."

It is appellant's contention that when the patentee has met with a final court adjudication that decrees one of his claims invalid, it is necessary for such patentee to file a statutory disclaimer with reasonable diligence (*Ensten* v. *Simon Ascher & Co.*, 282 U.S. 445 [51 S.Ct. 207, 75 L.Ed. 453, 457]). And that it has been held that the disclaimer must be filed within thirty days after finality of court litigation (*Herman* v. *Youngstown Car Mfg. Co.*, 191 F. 579 [112 C.C.A. 185]; *Bassick Mfg. Co.* v. *Adams Grease Gun Corp.*, 52 F.2d 36, 40; *R. Hoe & Co.* v. *Goss Printing Press Co.*, 31 F.2d 565).

Appellant insists that the failure of respondents to file such disclaimer invalidated Patent No. 881 in its entirety. However, this motion, like the one preceding it, was a belated one. It came after the court had announced its decision on the merits and the cause was continued for the sole purpose of ascertaining the proper amount due respondents as shown by the respective audit reports. Furthermore, insofar as the disclaimer is concerned as bearing upon the patents, it would offend against the rule heretofore discussed, that a licensee cannot defend against the payment of royalties by challenging the validity of the licensor's patents. Insofar as termination of the license is concerned, what we have heretofore said on that subject indicates no merit in appellant's claim of termination. Its claim of illegality has heretofore been shown to be without merit. As to nonuser, that issue was in our opinion, correctly determined by the trial court for the reasons given and hereinbefore set forth in our quotations from the memorandum of ruling prepared by the trial judge when this cause was before him. Manifestly appellant suffered no prejudice and there was no abuse of discretion on the part of the court in denying admission into evidence of the proof sought to be presented by appellant.

In the light of what we have herein said, it follows that appellant's final contention that the judgment is against law and the facts adduced cannot be sustained.

For the foregoing reasons the judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 27, 1954.