[Civ. No. 19150. First Dist., Div. Two. Aug. 2, 1961.]

EDGAR ROGERS, Appellant, v. CLYDE HENSLEY et al., Respondents.

George B. White for Appellant.

Rhodes, Sabraw & Avera for Respondents.

STONE, J. pro tem.*—Respondent Clyde Hensley, president of respondent Hensley Equipment Company, invented an earth-ripping device which attached to the cutting edge of a bulldozer blade by means of a twin shank. He also perfected a similar device which could be used on a dozer blade as a

*Assigned by Chairman of Judicial Council.

brush rake. The principal feature of the invention is the design and method of attaching the equipment to the lower lip of a bulldozer blade so that no pressure is exerted on the thin breakable edge. Respondents were manufacturing these devices in 1951 when appellant Rogers called at their plant to inquire about having a ditching attachment for bulldozing blades manufactured. Hensley examined Rogers' device and suggested changes, one of which was to utilize the Hensley twin shank method of attaching the mechanism to the bulldozer blade. The parties agreed to work together to perfect the device and appellant was given space in respondents' workshop. Together they perfected the ''Hensley-Rogers dozer ripper.'' By oral contract the parties agreed that appellant should manufacture and respondents should market the jointly developed device on a ''50-50'' basis. After a few months, appellant notified respondents that he was moving his place of manufacture to another city; this caused a disagreement and the parties mutually rescinded the oral agreement. They then entered into a written ''cross-licensing'' agreement pursuant to which each independently began to manufacture and market the jointly developed device under his own name brand. At the time the cross-licensing agreement was executed, Rogers and Hensley each had filed a patent application covering the devices he had perfected. Appellant Rogers was never granted a patent, but respondent Hensley received his some time later.

After several months a dispute arose, respondents contending that it was not the intention of the parties to cross-license to appellant certain items covered by respondents' invention. Appellant's accounting was rejected by respondents because of the dispute, so appellant filed this action for an accounting based upon the cross-licensing agreement. He also sought an injunction restraining respondents from manufacturing any items licensed to appellant by the agreement. Respondents denied the principal allegations of the complaint and, by way of affirmative defense, alleged that appellant's representation that he had made a valid patent application was fraudulent. Respondents also filed a cross-complaint by which they sought reformation of the cross-licensing agreement; an adjudication that the agreement as reformed ''is rescinded and canceled''; that appellant be enjoined from manufacturing articles covered by respondents' patent; for an accounting; for damages by reason of appellant's interference with respondents' ''business relationships with his distributors and customers.''

Appellant contends that the state court lacked jurisdiction of the subject matter of the controversy, since the complaint and answer raised the question of the validity of appellant's patent application, and the issues raised by the cross-complaint required a determination of the claim or scope of respondents' patent. The Constitution of the United States delegates to the federal government exclusively the power to issue patents, and specifies that Congress shall have the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to . . . Inventors the exclusive Right to their respective . . . Discoveries." (U.S. Const., art. I, § 8, clause 8.) Congress has implemented this constitutional provision by the following statute:

"The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases." (28 U.S.C.A. § 1338(a).)

█ The constitutional provisions and the implementing statute appear to require the trial of patent issues in the federal courts. The United States Supreme Court, however, has determined that there is a distinction between patent issues raised by the *case* as pleaded and patent *questions* which are incidental to the case. The test which determines whether jurisdiction of an action involving a patent rests in a federal or a state court was enunciated by the United States Supreme Court in *Pratt* v. *Paris Gaslight & Coke Co.*, 168 U.S. 255 at page 259 [18 S.Ct. 62, 42 L.Ed. 458], as follows:

"The state court had jurisdiction both of the parties and the subject-matter as set forth in the declaration, and it could not be ousted of such jurisdiction by the fact that, incidentally to one of these defences, the defendant claimed the invalidity of a certain patent. To hold that it has no right to introduce evidence upon this subject is to do it a wrong and deny it a remedy. Section 711 does not deprive the state courts of the power to determine *questions* arising under the patent laws, but only of assuming jurisdiction of '*cases*' arising under those laws. There is a clear distinction between a case and a question arising under the patent laws. The former arises when the plaintiff in his opening pleading—be it a bill, complaint or declaration—sets up a right under the patent laws as ground for a recovery. Of such the state courts have no jurisdiction. The latter may appear in the plea or answer

or in the testimony. The determination of such question is not beyond the competency of the state tribunals.''

Since the *Pratt* case, many federal and state court opinions have expressed the same principle in varying ways. An analysis of these cases and the rule which has evolved is summarized by the following note in 167 American Law Reports, page 1118:

''Reduced to its lowest terms, the correct rule is that if the plaintiff founds his suit directly on a breach of some right created by the patent laws, he makes a case arising under those laws and only a Federal court has jurisdiction; but if he founds his suit on some right vested in him by the common law, or by general equity jurisprudence, he makes a case arising under state law and only a state court has jurisdiction. In this respect it is to be remembered that there is no Federal common law or equity law. These are the juridical attributes of the localities. Their principles, when administered in a Federal court, are derived from the respective peoples of the states. A case founded on a principle of tort, contract, or equity law is a case arising under state law. And whichever court has jurisdiction by reason of the nature of the cause of action advanced by the plaintiff, that court may decide such issues as arise incidentally to a decision. If a plaintiff sues in a Federal court for infringement, and the defendant sets up rights under a contract, the court may reach its conclusion upon an issue of contract law. If the plaintiff sues in a state court for breach of a contract, the state court may decide an issue raised as to the validity or coverage of a patent, and even submit a question of priority to a jury. If the action be for breach of a contract to sell the plaintiff a valid patent, the state court may decide the validity of the patent. This is the almost universal rule.''

The courts of this state have followed the foregoing rule. (*Pendleton* v. *Ferguson,* 15 Cal.2d 319, 326 [101 P.2d 81, 688]; *H. J. Heinz Co.* v. *Superior Court,* 42 Cal.2d 164, 172 [266 P.2d 5]; *Farmland Irrigation Co.* v. *Dopplmaier,* 48 Cal. 2d 208, 216 [308 P.2d 732]; *Seagren* v. *Smith,* 63 Cal.App.2d 733, 736 [147 P.2d 682]; *Davis* v. *Kittle Mfg. Co.,* 134 Cal. App. 254, 262 [25 P.2d 253]; *Deakins* v. *Superior Court,* 90 Cal.App. 630, 631 [266 P. 563].)

We have before us a complaint which alleges a cause of action for an accounting and a cause of action for an injunction, both founded upon the cross-licensing agreement between the parties. Defendants' cross-complaint is likewise

based on the cross-licensing agreement, in that it requests the court to reform the same; to declare the reformed cross-licensing agreement rescinded; to enjoin cross-defendant from manufacturing products covered by defendants' patent; and for an injunction. Since the "case" is founded on the law of contracts and on equity and thus within the jurisdiction of the state court, so also are the incidental "questions" of the validity and of the claim and scope of the patents of the respective parties. (See *Laning* v. *National Ribbon & Carbon Paper Mfg. Co.*, 125 F.2d 565, 566; *Luckett* v. *Delpark, Inc.*, 270 U.S. 496 [46 S.Ct. 397, 70 L.Ed. 703]; Walker on Patents [Dellers ed.], vol. 3, p. 1596.)

 Appellant next attacks the sufficiency of the evidence to support the trial court's interpretation of the scope of respondents' patent, and the finding of infringement. The patent was never introduced in evidence. Respondent Hensley testified concerning the aspects of his patent and one of his attorneys qualified as an expert witness and testified concerning the features which, in the opinion of the witness, were covered by respondent's patent. This testimony, respondents contend, is sufficient to sustain the finding of the court as to the scope of the patent. In considering respondent's argument, it is necessary to first determine the purpose and the efficacy of expert testimony in a patent trial. It appears that the province of the expert witness is limited to an explanation of the patent and that his testimony cannot serve as a substitute for the patent itself. (Walker on Patents [Dellers ed.], vol. 3, p. 2009.) Although the court may adopt the interpretive expression of the expert, it cannot do so until after such expert testimony has been measured by the language of the patent. That is to say, the utility of the expert's opinion lies in whatever bearing it may have on the court's interpretation of the language of the patent.

 The duty to construe the patent, however, always resides in the court and it may not delegate that responsibility to an expert witness. (*James P. Marsh Corp.* v. *United States Gauge Co.*, 129 F.2d 161, 164; *Criner* v. *Micro-Westco*, 139 F.2d 681, 684.) To hold otherwise in this particular case would result in a determination of the ultimate and pivotal question by respondents' attorney, their expert witness. And, in any case, it would thwart the purpose of the patent provisions of the Constitution and the statutes enacted by Congress pursuant thereto. Since a patent creates a nationwide monopoly, the public, as well as the patentee, has an interest in the claim

and the scope of every patent issued. These rights and interests must be determined from the language of the patent itself.

The role of the expert witness in the matter of patent interpretation is summarized by Mr. Justice Learned Hand in *Kohn* v. *Eimer*, 265 F. 900 at page 902, as follows:

"We have not the slightest wish to minimize the vital importance of expert testimony in patent suits, or to suggest that we are not absolutely dependent upon it within its proper scope; but that scope is often altogether misapprehended, as the appellant has misapprehended it here. Specifications are written to those skilled in the art, among whom judges are not. It therefore becomes necessary, when the terminology of the art is not comprehensible to a lay person, that so much of it as is used in the specifications should be translated into colloquial language; in short, that the judge should understand what the specifications say. *This is the only permissible use of expert testimony which we recognize. When the judge has understood the specifications, he cannot avoid the responsibility of deciding himself all questions of infringement* and anticipation, and the testimony of experts upon these issues is inevitably a burdensome impertinence." [Emphasis added.]

(See also *National Transformer Corp.* v. *France Mfg. Co.*, 215 F.2d 343, 358; Walker on Patents [Dellers ed.], vol. 3, p. 1207.)

 Respondents' attorney and expert witness recognized the duty of the court to make its final determination from an interpretation of the language of the patent and not by adopting the testimony of an expert witness. This is disclosed by the following excerpt from the record:

"MR. AVERA: Q. My next question would be, I would like to inquire of Mr. Swain what, in his opinion, this patent purports to cover.

"MR. PRICE: Objected to as invading the province of the Court. I don't think he would be testifying in a Federal Court.

"THE COURT: I doubt very seriously if that is a subject for expert testimony. I think it is a matter that would rest almost entirely in the patent office or Board of Appeals, or somewhere back there, isn't that correct?

"MR. PRICE: Well, I urge the formula objection, as well.

"THE WITNESS: If I might answer Your Honor's question, when the patent office has a patent, it of course doesn't have these other devices and the device before it, so the patent office

makes no holding that this device infringes this patent. What the patent office does is issue these claims, and then it *is up to a court to take those claims and read them, and determine whether or not those claims are infringed.*" [Emphasis added.]

The foregoing quotation from the record also serves to refute respondents' argument that the opinion evidence is sufficient because appellant failed to object to the testimony on the ground of the best evidence rule. The law is clear that an expression of opinion by an expert witness is not barred by the best evidence rule insofar as it purports to be an interpretation of a patent. The question presented to this court is not the admissibility of the testimony, but whether such opinion can substitute for the patent itself and obviate the court's reading and interpreting the document. For the reasons hereinbefore stated, we hold that it cannot.

It is also contended that the court's finding that appellant must account for "wear points," a component part of the devices manufactured, is without supporting evidence. Appellant asserts that the "wear points" are not covered by the patent, but that there is no way the question can be determined from the record in the absence of the patent. We find this to be so, and also that it cannot be determined whether the manufacture and inclusion of "wear points" as a part of the completed device constitutes contributory infringement. We believe the court should have had the patent before it in making these determinations.

The judgment is reversed.

Draper, Acting P. J., and Shoemaker, J., concurred.