[Civ. No. 32765.  Second Dist., Div. One.  July 10, 1969.]

GOLDEN WEST MELODIES, INC., Plaintiff and Respondent, v. CAPITOL RECORDS, INC., Defendant and Appellant.

Averill C. Pasarow for Defendant and Appellant.

Abraham Marcus and Mitchell N. Reinis for Plaintiff and Respondent.

WOOD, P. J.—This is an action by Golden West Melodies, Inc. to recover royalties allegedly due from defendant Capitol

Records, Inc., under a licensing agreement for the use of a musical composition entitled "When God Dips His Love In My Heart." The court granted plaintiff's motion for partial summary judgment establishing plaintiff's claim "to the extent of $6,555.96," and the matter proceeded to trial on the issue whether plaintiff was entitled to recovery exceeding that amount. It was adjudged that plaintiff recover $16,764.22 (total royalties), and interest ($6,631.08) on the royalties from the dates of accrual thereof. Defendant appeals from the judgment.

Appellant contends that the court lacked jurisdiction over the subject of the action, erred in ordering partial summary judgment, abused its discretion in refusing to modify the pretrial order, and erred in awarding "pre-judgment interest."

The composition "When God Dips His Love In My Heart" was a religious composition written by Cleavant Derricks several years prior to 1949. In that year, Mr. McCall (president of Four Star), who composes music under the pseudonym W. S. Stevenson, made changes in the melody and lyrics of the composition (referred to as an "adaptation," or "arrangement," or "derivative work"), prepared a lead sheet, and published the adaptation with notice of copyright. In 1963, a certificate of copyright registration was issued to Four Star by the Register of Copyrights.

In 1956, Tennessee Ernie Ford, a television and recording artist, desired to record the composition. On July 13, 1956, Frances Jenkins, a representative of Mr. Ford, requested that Mr. McCall send her a copy of the lead sheet of the composition "via Special Delivery." Mr. McCall immediately complied with the request. On July 15, 1956, Mr. Ford recorded the composition for defendant Capitol Records. Several months thereafter, and prior to the release of Mr. Ford's recorded performance of the composition, Capitol requested a license from Four Star to manufacture records of Mr. Ford's recording. On March 27, 1957, after negotiations, Four Star and Capitol entered into a written license agreement whereby Capitol agreed to pay certain royalties for a "nonexclusive license" to manufacture and sell records (by Mr. Ford) of the composition. The agreement provided, among other things, that the license was effective retroactively to July 15, 1956 (date when composition was recorded by Mr. Ford).

Thereafter, and until April 29, 1959, Capitol paid royalties in the total amount of $6,555.96 to Four Star pursuant to the

license agreement. About March 20, 1959, Capitol received a letter from Sesac, Inc., a music publishing company, wherein it was stated that Sesac was the copyright proprietor of the composition "When God Dips His Love In My Heart," composed by Cleavant Derricks, and that Sesac requested Capitol to sign a license agreement (enclosed in letter) for use of the composition by Capitol. Capitol then made an investigation of the title to the copyright and "concluded that either the work was in the public domain or that the copyright was the property of someone other than" Four Star.

On April 29, 1959, Capitol notified Mr. McCall (by letter) that Capitol would no longer pay royalties to Four Star for use of the composition, that the license would no longer be honored, and that Capitol would recoup the royalties ($6,555.96) already paid under the license from royalties due on other licenses which Capitol had from Four Star. Thereafter, Capitol withheld royalties of at least $6,555.96 due Four Star under other licenses.

On June 10, 1963, plaintiff commenced the herein action to recover royalties allegedly due plaintiff, and its predecessor (Four Star),[1] under the licensing agreement. Capitol's answer admitted that it signed the licensing agreement and alleged that it paid $6,555.96 as royalties pursuant to the agreement and prior to discovering that plaintiff and plaintiff's predecessor were not the proprietors of the musical composition, and that Capitol "recouped" $6,555.96. In other respects, the answer in substance denied the allegations of the first amended complaint and alleged several affirmative defenses (lack of jurisdiction, lack of consideration, fraud, breach of warranty, statute of limitations, etc.).

Defendant moved to strike the complaint and for summary judgment in favor of defendant; and, thereafter, plaintiff moved to strike the answer and for summary judgment in favor of plaintiff. The motions were heard concurrently, and the court denied defendant's motion and granted plaintiff's motion in part. With reference to plaintiff's motion, the court found that the answer to the first amended complaint presented no defense to plaintiff's causes of action, and pre-

---

[1]In the first amended complaint (verified), it was alleged that plaintiff's predecessor, Four Star, was dissolved in 1960 by filing certain certificates with the Secretary of State and that plaintiff, as the sole stockholder of Four Star, succeeded to all of the assets of Four Star and continued its business as a separate division of plaintiff under the fictitious trade name of Four Star Sales Company. (See *infra*.)

sented no triable issue of fact save and except as to the amount due plaintiff in excess of the sum of $6,555.96; and that plaintiff was entitled to recover "at least" $6,555.96 from defendant. The court also ordered defendant's answer, including the affirmative defenses therein, stricken in all respects except insofar as it denied liability in excess of $6,555.96; and ordered that upon the determination of the action, the judgment shall award plaintiff $6,555.96, in addition to such other amounts as the court may find due plaintiff under the first amended complaint.[2]

Defendant's motion for reconsideration of the order was denied. At the pretrial conference, defendant "interpreted the order to mean that all issues raised by defendant's answer were still to be tried insofar as any amounts in excess of $6,555.96 were concerned."; and defendant filed a separate statement of legal and factual contentions in which, among other things, defendant stated 16 issues of fact and law allegedly remaining in dispute. Plaintiff moved (at pretrial conference) to strike said statement of issues. The court (in pretrial order) granted the motion, struck the statement of issues, and ordered that the case proceed to trial on the single issue of the amount plaintiff was entitled to recover in excess of $6,555.96.

At the trial, the court denied defendant's motion to modify the pretrial order, and rejected defendant's offer of evidence relating to the affirmative defenses alleged in the answer. The court found, based upon an accounting by defendant relating to records of the composition made by defendant, that the amount due from defendant to plaintiff was $16.764.22, which amount included the $6,555.96 to which plaintiff was entitled under the order of February 28, 1966 (order granting motion for partial judgment). It was also found, from the books and records of defendant, that the number of records manufactured by defendant was certain; and that plaintiff was

---

[2]Section 437c of the Code of Civil Procedure, which provides for striking an answer and entering judgment if there is no defense to the action, provides in part as follows: "If it appears that such defense applies only to a part of the plaintiff's claim . . . of that any part of a claim is admitted . . . the court shall, by order, so declare, and plaintiff's claim . . . shall be deemed established as to so much thereof as is by such order declared . . . and the action may proceed as to the issues remaining between the parties. No judgment shall be entered prior to the termination of such action but the judgment in such action shall, in addition to any matters determined in such matter, award judgment as established by the proceedings herein provided for. A judgment entered upon this section is an appealable judgment as in other cases."

entitled to interest at the rate of 7 percent per annum "from the respective accounting dates" to July 1, 1967, and that such interest was $6,631.08.

Appellant contends that the court lacked jurisdiction over the subject of the action. It argues that the action was an action for statutory royalties under the United States Copyright Act and that exclusive jurisdiction of such action is vested in the United States District Court under the provisions of 17 United States Code section 1(e), and 28 United States Code section 1338(a).

Section 1 of title 17 of the United States Code provides for exclusive rights to copyrighted works. Subdivision (e) thereof relates to musical compositions and provides for a royalty of 2 cents on mechanical reproductions of such compositions copyrighted after July 1, 1909.

Section 1338, subdivision (a), of title 28 of the United States Code provides as follows: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases."

In *Danks* v. *Gordon* (2d Cir. 1921) 272 F. 821, the alleged proprietor of copyrights on several musical compositions (including "Silver Threads Among The Gold") sought an injunction and an accounting for the copies of the composition which defendants had published under an agreement with the original proprietor of the copyrights. The court held that plaintiff did not have title to the copyrights and could not therefore maintain an infringement action under federal jurisdiction. With reference to whether the district court had jurisdiction to permit recovery under the agreement, the court said (p. 827) : "As respects jurisdiction the statute provides that the district courts shall have original jurisdiction of all suits at law or in equity arising under copyright laws. If a suit to recover royalties agreed to be paid to an author out of the proceeds realized from the publication and sale of a copyrighted production is one which arises under the copyright laws, then the court not only had jurisdiction, but it had exclusive jurisdiction. [Citation.] In all such cases it is necessary to distinguish between the copyright and a contract of which the copyright is the subject matter. If the suit is one brought to enforce a right based upon a contract which relates to a copyrighted production, the suit is one which arises out

of the contract and is not one arising under the copyright statute, and the federal courts are without jurisdiction. [Citations.] It is well settled that a suit for royalties reserved upon the sale of a patent right is not a suit arising under the patent laws. There are repeated decisions to that effect. [Citations.].''[3]

■   In California, it has been held that the state courts have jurisdiction over actions to set aside, specifically enforce, or recover royalties under, patent license contracts. (See *Farmland Irr. Co.* v. *Dopplmaier,* 48 Cal.2d 208, 217 [308 P.2d 732, 66 A.L.R.2d 590] ; *H. J. Heinz Co.* v. *Superior Court,* 42 Cal.2d 164, 172-173 [266 P.2d 5] ; *Pendleton* v. *Ferguson,* 15 Cal.2d 319, 326 [101 P.2d 81] ; *Rogers* v. *Hensley,* 194 Cal.App.2d 486, 490 [14 Cal.Rptr. 870]; *Seagren* v. *Smith,* 63 Cal.App.2d 733, 736-737 [147 P.2d 682].)

In the present case, plaintiff seeks to recover royalties allegedly due under the agreement between plaintiff's predecessor and defendant. Although the subject matter of the agreement related to statutory copyrights,[4] the superior court had jurisdiction over the action.

■   Appellant further contends that the court erred in ordering partial summary judgment in favor of plaintiff. It argues, among other things, that the court, in granting the.

---

[3]In Nimer on Copyright, § 131.11, pp. 567-568, with reference to 28 U.S.C., § 1338(a), it is said: ''By reason of the above [28 U.S.C. § 1338(a)] it is clear that actions for infringement of statutory copyright lie exclusively within the jurisdiction of the federal courts. However, not every action predicated on rights derived from the Copyright Act is necessarily an action for copyright infringement, or in the words of Sec. 1338(a), an action 'arising under' the Copyright Act. The 'subject matter of a contract may relate to a work in statutory copyright or to rights derived thereunder'. Nevertheless, jurisdiction lies with the state courts in an action to enforce or to invalidate such a contract, since contractual rights are a matter of state law. The fact that questions of copyright law may also have to be determined in such an action does not oust state jurisdiction. Thus an action for breach of warranty is properly brought in a state court even though proof of such breach turns on whether the statutory copyright of a third party has been infringed. In an action for rescission of a contract involving copyrights the state courts have jurisdiction, and apparently upon recognizing such a rescission may enjoin the defendant from further exploiting the copyrighted work. State and not federal courts have jurisdiction in contract actions for nonpayment of royalties arising out of exploitation of copyrighted works [citing *Danks* v. *Gordon, supra,* 272 F. 821], and for specific performance of contracts to assign copyrights.''

[4]There is a reference in the agreement to ''Section 1-E of the 'Copyright Act of the United States.'' There are provisions in the agreement for royalties of various amounts, ranging from 1¼¢ to 2¢ on records manufactured by defendant, which amounts vary from the 2¢ royalty provided for in said section of the copyright act.

partial summary judgment and striking the affirmative defenses from defendant's answer, in effect precluded defendant from asserting those defenses on the ground that defendant, as licensee, was estopped to deny that Four Star had title to the musical composition or to the copyright thereof. (The gist of the alleged defenses of lack of consideration, misrepresentation, and breach of warranty is that plaintiff's predecessor in interest [Four Star] did not have title to the musical composition or to the copyright thereof, and therefore could not recover royalties under the agreement.)

After the present case had been submitted for decision, the United States Supreme Court, on June 16, 1969, rendered an opinion in *Lear, Inc.* v. *Adkins* (395 U.S. 653 [23 L.Ed.2d 610, 89 S.Ct. 1902]). In that case the Supreme Court, after reviewing decisions which applied the doctrine that a patent licensee is estopped to deny the validity of his licensor's patent, held that, in the typical situation involving the negotiation of a license after a patent has issued, the licensee is not estopped to deny the validity of his licensor's patent.[5] In that case, before the patent was issued, the inventor (Adkins) and the licensee (Lear, Inc.) had entered into an agreement whereby Lear was permitted to use Adkins' unpatented secret idea. With respect to the effect of that agreement on Adkins' right to the idea during the time preceding the issuance of the patent, the court remanded the case to the California Supreme Court for further proceedings consistent with the opinion.

In the present case, it seems that the superior court, in granting partial summary judgment and striking the affirmative defenses from defendant's answer (and thereby in effect determining all issues except the total amount of royalties due under the agreement), applied the rule of licensee estoppel, as that rule existed prior to the decision of the United States Supreme Court in *Lear, Inc.* v. *Adkins, supra.* It is apparent that the former rule to the effect that a licensee was estopped

---

[5]Prior to the decision in *Lear, Inc.* v. *Adkins* by the United States Supreme Court, the doctrine of licensee estoppel had been applied in patent law cases (e.g., see *Automatic Radio Mfg. Co.* v. *Hazeltine Research, Inc.*, 339 U.S. 827, 836 [94 L.Ed. 1312, 1320, 70 S.Ct. 894]; *United States* v. *Harvey Steel Co.*, 196 U.S. 310 [49 L.Ed. 492, 25 S.Ct. 240]; *Adkins* v. *Lear, Inc.*, 67 Cal.2d 882, 891 [64 Cal.Rptr. 545, 435 P.2d 321]; *Del Riccio* v. *Photochart*, 124 Cal.App.2d 301, 316 [268 P.2d 814].) The doctrine has also been applied in copyright cases (e.g., *Hart* v. *Fox*, 166 N.Y.S. 793, 796; cf. *Danks* v. *Gordon, supra*, 272 F. 821, 827.)

to deny his licensor's title was an important factor in the trial court's determination as to whether there was a triable issue of fact. In view of this recent decision of the United States Supreme Court to the effect that a licensee, under some circumstances, is not estopped to deny his licensor's title, the present case should be remanded to the superior court for reconsideration in the light of the decision of *Lear, Inc.* v. *Adkins, supra.*

Respondent's motion to augment the record on appeal by including depositions is denied.

The judgment is reversed, and the case is remanded to the superior court for further proceedings in the light of the decision of *Lear, Inc.* v. *Adkins, supra* (June 16, 1969), regarding licensee estoppel.

Lillie, J., and Thompson, J., concurred.